SULLIVAN ET AL. *v.* NORTHWEST GARAGE & STORAGE COMPANY, INC. ET AL.

[No. 70, September Term, 1960.]

545

546

*Decided December 8, 1960.*

*Motion for rehearing filed January 9, 1961, denied January 13, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Juanita Jackson Mitchell* and *Archie D. Williams,* with whom were *Williams & Murphy* on the brief, for the appellants.

*Lawrence A. Kaufman* and *Nathan Patz,* with whom were *Harrison L. Winter, City Solicitor of Baltimore,* and *John A. Dewicki, Assistant City Solicitor,* on the brief for the City of Baltimore, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The individual appellants, Mr. and Mrs. Joecephas Sullivan, appeal from a dismissal of their bill for (1) a declaratory decree that the approval by the Board of Municipal and Zoning Appeals of Baltimore of the construction of a commercial building across from their home on Whittier Avenue by the Northwest Garage and Storage Company, Inc., an appellee, be declared null and void because not given at a public meeting of the Board; and (2) in the alternative, for a permanent injunction restraining Northwest from erecting the building with an entrance and exit for trucks on Whittier Avenue.[1]

Northwest owned an unimproved parcel of land in Baltimore between Elgin Avenue on the south and Whittier Avenue on the north. The Elgin Avenue frontage to a depth of about 100 feet toward Whittier Avenue is zoned second commercial. The Whittier Avenue frontage for a depth of some 65 feet toward Elgin Avenue is zoned residential, but had the status of a non-conforming use for the storage of trucks and commercial vehicles and for the exhibition and selling of used cars.

Northwest applied for a permit for the construction of a building to house food vending vehicles such as retail ice cream trucks. The building was to be of two-story height with an exit and entrance for the vehicles on the first floor on Elgin Avenue, and a one-story elevation, with the contested entrance and exit on Whittier Avenue for the vehicles on the second floor (the floor approximately level with Whittier Avenue).

The Board of Municipal and Zoning Appeals held a duly called and advertised public hearing on June 23, 1959, attended by protesting neighbors, including the individual appellants. At the conclusion of the hearing the five members

---

1. The appeal of the National Association for the Advancement of Colored People was dismissed on motion of the appellees before the argument here upon the authority of Southland Hills Improvement Ass'n v. Raine, 220 Md. 213, and cases cited therein, on the ground that the association has no interest in the matter as a property owner or resident, and therefore no justiciable interest in the determination of the issues in the case.

of the Board retired to its offices in the Municipal Building, conferred, and then unanimously approved the issuance of the permit. The minutes of the Board of June 23rd note the action of the Board and the vote taken, and the decision was immediately available as a public record to all who inquired. All interested parties were notified in writing of the Board's decision and action on June 29, 1959.

An appeal was entered to the Baltimore City Court on July 29, 1959. Judge Oppenheimer, whose knowledge and opinion as to the requirements of administrative proceedings are entitled to great respect, held that the provision that meetings of the Board shall be open to the public found in the State Zoning Enabling Act "clearly pertains only to meetings in the nature of hearings where opposing parties and their counsel can present evidence and arguments to the Board." He went on to say: "These meetings are open to the public. It is fundamental in the requirements of fair procedure and due process of law that there shall be public hearings in adversary proceedings. However, this requirement of the law, in my judgment, does not apply to deliberations of an Administrative Board after testimony is taken and arguments heard. All proceedings of a court are open to the public—that is essential under our system of government. However, deliberations of judges, even of the Court of Appeals, are not open to the public under constitutional or any other requirement."

Judge Oppenheimer further held that the thirty-day period for appeal to court from the action of the Board ran from the day of the decision and not from the date of notification of the parties (Code (1957), Art. 66B, Sec. 7(j), and *State Housing, Inc. v. City of Baltimore*, 215 Md. 294, 298), and dismissed the appeal as filed too late. There was no appeal to this Court from the order, which followed Judge Oppenheimer's opinion, dismissing the appeal to the Baltimore City Court.

On November 25, 1959, the bill for declaratory relief and injunction which is before us was filed in the Circuit Court No. 2 of Baltimore City. The appellees' answer denied that the Board had to deliberate in public, claimed that the point was res judicata, and asserted that the allegations that the

opening for the ingress and egress of trucks in the proposed building on Whittier Avenue would constitute a nuisance were speculative and that the lawful action of the zoning authorities in approving the building containing the opening could not be attacked collaterally.

After hearing testimony, Judge Sodaro adopted the decision of Judge Oppenheimer in the prior proceeding in the Baltimore City Court as to the need of public deliberation by the Board, saying: "* * * the contentions of the complainants in this regard are without merit, without the necessity of adjudicating at this time whether or not the order of Judge Oppenheimer is res judicata in the instant case."

We think Judge Oppenheimer was right, finding strong indication in the statute that he read it correctly.

Subsection (c) of Section 7, which requires public "meetings," says that the chairman may compel attendance of witnesses and administer oaths which points to legislative contemplation of the word meeting as synonymous with hearing. The same subsection directs the Board to keep minutes of its "proceedings," which gives the impression that the Board is to function outside of a meeting or hearing, particularly since there is the further language that the Board shall keep records of its "examinations" and "other official actions." All of these things, the minutes, the records of the examinations and the records of other official actions are stated to be public records.

Subsection (f) of Section 7 directs the Board to fix a reasonable time for the hearing of an appeal from a lower administrative zoning official, to give public notice thereof, as well as due notice to the parties in interest and to "decide the same within a reasonable time." There can be no doubt that under the language last quoted the decision need not be made at the hearing, and certainly it would be unreasonable to require the calling of a new hearing or meeting, duly advertised and with notice to the parties, to announce a decision reached after private deliberations and irrational to require the Board to convene to announce its decision to an empty room. The Baltimore City Charter (Flack, 1949), Sec. 136, implements the statute and gives hint of its true meaning by directing the

Board to give reasonable notice of its decisions by mail to all parties in interest as revealed by its records.

The weight of such authority as there is supports our conclusion that the hearings of the Board must be public but that the deliberations of the Board after the hearing is completed may be in private. 58 Am. Jur. *Zoning* Sec. 222; *Keiser v. Inhabitants of City of Plainfield* (Sup. Ct. N. J.), 159 A. 785, 786; *St. John's Roman Catholic Church v. Board of Adjustments* (Conn.), 8 A. 2d 1, 4; *School District No. 9 v. District Boundary Board* (Wyo.), 351 P. 2d 106, 110. Appellants rely on *Blum v. Board of Zoning & Appeals,* 149 N. Y. S. 2d 5, a decision by an intermediate appellate court, which seems to hold that everything a board does must be in public. It would appear that the Court was influenced in reaching its views by the long practice of the Board of Education in New York holding its meetings in public. If long practice and custom were to control, we note that the evidence in the case before us is that since 1946 the Board has done in every hearing before it just what it did in this case—retired after the completion of the hearing, deliberated, reached a decision, recorded the decision and the vote of the members thereon (all of which then became a public record immediately available), and soon after notified the parties in interest by mail. In any event we are not persuaded by the *Blum* case.

In rejecting the prayer for injunctive relief, Judge Sodaro agreed with the finding of the Board that the proposed building would not create hazards from fire or disease or menace the public health, security or morals. He pointed out that the complainants raised no objection to the construction of the building on the residential portion of the lot but, rather, urged that the entrance to the second floor of the building on Whittier Avenue would destroy or materially prejudice the rights of the homeowners on that avenue, particularly the complainants, by materially diminishing the value of their properties and seriously interfering with the ordinary comfort and enjoyment of them as a result of the ingress and egress of the trucks day and night, of the operations of the business in the building, and of street noises, vibrations and traffic congestion.

Judge Sodaro concluded that the testimony failed to show even a reasonable probability that the contested entrance will either constitute or result in a nuisance. We think the record supports his findings of fact and that he correctly applied the controlling law. His opinion on the point, which we adopt, follows:

"The important and narrow issue to be decided is whether or not, under all the facts and circumstances, the Court should issue an injunction for an anticipated nuisance resulting from the entrance way on Whittier Avenue.

"There is no difficulty in regard to the principle invoked by the Complainants in this case, of the power to interfere by injunction to restrain a party from so using his own property as to destroy or materially prejudice the rights of his neighbors. Of course, it is not every inconvenience in the nature of a nuisance to a party's dwelling that will call forth the restraining power of the Court.

"To justify an injunction to restrain a threatened nuisance to a dwelling, the injury must be shown to be of such a character as to diminish materially the value of the property as a dwelling and seriously interfere with the ordinary comfort and enjoyment of it. It must appear to be a case of real injury and not a mere apprehension of injury.

"The real question is whether the anticipated annoyance from this entrance way in question is such as materially to interfere with the ordinary comfort of human existence. The difficulty in the Complainants' case consists in proving the detrimental consequences that might follow the construction of the building as presently designed. Mere opinions and apprehensions are speculative at best. The Court can foresee where, with proper control of the business and adequate traffic regulations of Whittier Avenue, a nuisance may not result such as will materially diminish the value of the Complainants' property, and the ordinary comfort and enjoyment of it.

552

"In the leading case of *Adams v. Michael*, 38 Md. 123, where an injunction was sought to restrain a party from erecting a factory for the manufacture of felt-roofing, the Court said: 'The granting of injunctions on applications of this character involves the exercise of a most delicate power, and the court is always reluctant to act except in cases where the right is clear and unquestioned, and the facts show an urgent necessity. The general rule is, that an injunction will only be granted to restrain an actual existing nuisance; but where it can be plainly seen that acts which, when completed, will certainly constitute or result in a grievous nuisance, or where a party threatens, or begins to do, or insists upon his right to do certain acts, the court will interfere, though no nuisance may have been actually committed, if the circumstances of the case enable the court to form an opinion as to the illegality of the acts complained of, and the irreparable injury which will ensue. * * * The court, however, must in all such cases, at the time the motion is made, be enabled either to form its own opinion, from the circumstances of the case, as to the legality of the meditated purpose of the defendants, or to put that question into a course of immediate trial; and where that cannot be done, the motion for the injunction will not be allowed to stand over till the purpose of the defendant has been so far executed as that its character may be judged of, but the application will be at once refused, though without prejudice to any future application.'

"In *King v. Hamill*, 97 Md. 103, where an injunction was sought to restrain the building of a stable on the ground that a nuisance was certain to follow the occupancy of the proposed stable, the Court said: 'Certainly an individual cannot complain of the erection of a building contrary to an ordinance of a town unless he shows that the erection will work special and irreparable injury to him and his prop-

erty, and the appellant has not shown that this stable will work irreparable injury to her and her property. It may be that it would be more agreeable to her not to have a stable opposite to her house, or very near to it, but we cannot assume, and the record utterly fails to show, that the one being erected by the appellee will so injure the appellant as to justify the Court in granting an injunction to prevent anticipated damage * * *. An injunction will not ordinarily be granted against an anticipated nuisance unless the facts alleged and proven are sufficient to show it will be a nuisance per se.'

"Clearly, the proposed entrance way on Whittier Avenue cannot be construed as a nuisance per se.

"Examining the testimony then in the light of those authorities the record fails to show with any approach to certainty or even with reasonable probability that this entrance will certainly constitute or result in a grievous nuisance, or that an urgent necessity exists. Although some depreciation in property values may result, I cannot hold that an irreparable injury will result to the Complainants' property, or that there will be an annoyance as materially to interfere with their ordinary comfort. *Gallagher v. Flury,* 99 Md. 181.

"The Complainants will not be without remedy should an actual nuisance be committed after the completion and occupancy of the proposed building. That it might become a nuisance would not justify a restraining order, in anticipation, as to the entrance to the building itself.

"Consequently, under the facts as I find them, and under the law as I construe it, I have no alternative but to deny the relief sought by the Complainants and to dismiss the Bill of Complaint."

*Decree affirmed, with costs.*