Absalom F. JORDAN, Jr., Petitioner,

v.

DISTRICT OF COLUMBIA et al.,
Respondents.

No. 9444.

District of Columbia Court of Appeals.

Argued Dec. 4, 1975.

Decided Aug. 3, 1976.

---

Absalom F. Jordan, Jr., pro se.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington D.C., with whom C. Francis Murphy, Corp. Counsel, Washington D.C.; at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondents.

Before REILLY, Chief Judge, HARRIS, Associate Judge, and GREEN, Associate Judge, Superior Court.*

REILLY, Chief Judge:

This is a petition for review of a decision of the Board of Appeals and Review affirming a denial by the Metropolitan Police Department of an application under D.C.Code 1973, § 22–3206, for a license to carry a concealed pistol. It is the third occasion in which this court has been asked to pass on rejections of similar applications by petitioner.

This particular application was filed on March 8, 1974. No action was taken within the 30-day period established by Article 55, § 4(a) of the Police Regulations,[1] and petitioner appealed to the Board. On that very day the Police Department denied petitioner's application in a letter informing him that guidelines to be followed in event of reapplication would· soon be published. The appeal to the Board was withdrawn and then refiled.

While this was pending before the Board, the Police Department, following a

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. Article 55, § 4(a) of the Police Regulations reads as follows:

(a) When an application for a registration certificate under Art. 51 or a license under Art. 52 or Art. 54 of these Regulations is denied, or when the Chief of Police fails to act on any such application within 30 days of its receipt, or when such registration certificate or license is revoked as provided for these Regulations, the aggrieved party may within 5 days appeal in writing to the Commissioner, and the Commissioner shall schedule a hearing before him within 15 days after the appeal has been made. Any ruling from such hearing and any order of the Commissioner denying such an application for a dealer license made pursuant to Art. 55 of these Regulations shall be subject to appropriate judicial review.

suggestion of this court,[2] published proposed regulations for the issuance of licenses respecting applications under § 22–3206. *See* 20 D.C.Reg. 1218–1226 (June 3, 1974). One week later petitioner unsuccessfully sought a writ of mandamus from this court to compel the Board to convene a hearing on his appeal.[3]

On July 1, 1974, the Board remanded the case to the Police Department for reconsideration under the new police regulations, once adopted. Thereupon the Chief of Police rescinded his previous denial and reinstated petitioner's license application, informing petitioner that he would be given the opportunity to supplement his application when the new regulations became effective.

Two months later the regulations were adopted[4] and although he had notice of their publication, petitioner never supplemented or amended his application to comply with them. Instead, petitioner requested that his notice of appeal to the Board be reinstated pursuant to Section D, part 7, of the Police Regulations.[5] His request was granted and after a testimonial hearing the Board issued on February 5, 1975, findings of fact and conclusions of law sustaining the denial of petitioner's application.

Petitioner asserts essentially two grounds for reversal and remand: (1) the police regulations on which the Board rested its findings and conclusions were unlawful, and (2) the Board itself failed to comply with § 742(a) of the District of Columbia Self-Government Act.[6]

Subsequent to the opinion of this court in *Jordan v. District of Columbia Board of Appeals and Review*, D.C.App., 315 A.2d 153 (1974), the Police Department promulgated regulations which, contrary to petitioner's contention, were adopted and published according to procedural law and are consistent with Congressional policy set forth in the applicable code provision. *See* 21 D.C.Reg. 413–421.

Petitioner failed to comply with these regulations in several respects. Section B.1 of such regulations provides that:

(a) application must allege serious threats of death or serious bodily harm to his person or theft or destruction of property in writing, under oath. The applicant must also allege that the threats are of a nature that the legal possession of a pistol would provide adequate protection.

and

(b) The Chief of Police or his designated agent will conduct an investigation into the allegations of the applicant to determine if the alleged threats are serious and factual and are of a nature that can be protected by carrying a pistol. *Factors to be considered include* the substance of the alleged threat, whether or not the applicant made a timely report to the police of such threats, and whether or not the applicant has made a sworn complaint to the police in the courts of the District of Columbia. (Emphasis supplied.)

No allegations of threats were made under oath. Nor did petitioner make timely reports of any alleged threats to the police or sworn complaints to the police in the courts of the District of Columbia. Such failure to conform to the regulations obviously deprived the Police Chief of any opportunity to conduct an investigation to

---

2. *Jordan v. District of Columbia Bd. of App. and Rev.*, D.C.App., 315 A.2d 153 (1974).

3. *Jordan v. Washington*, D.C.App. (No. 8510, June 28, 1974, unpublished).

4. *See* 21 D.C.Reg. 413–421 (Sept. 3, 1974).

5. If there is no "notice to the applicant that his application has been approved within 30 days of the date of application, the application shall be presumed to be denied." 21 D.C. Reg. 420.

6. D.C.Code 1975 Supp., § 1–1503a.

determine the substantiality of threats and the need of petitioner to carry a defensive weapon.

■ Futhermore, petitioner applied for a license to carry a Smith & Wesson 9mm automatic pistol. Section C.5 of the Regulations,[7] in pertinent part, provides that:

> The pistol for which the license is applied must be a five or six shot revolver of no greater than .38 calibre. *Automatic or semi-automatic pistols will not be approved.* (Emphasis supplied.)

Thus under the current regulations, petitioner's application is fatally defective. Moreover, this limitation on the categories of licensable weapons is plainly reasonable.

■ Despite the opportunity to correct these infirmities in his application, petitioner chose to ignore them, contending that under the D.C. Administrative Procedure Act[8] the burden of proof in contested cases is on the proponent of a rule or order. Therefore he asserts that under D.C. Code 1973, § 22–3206,[9] he must allege only need and suitability and that the Police Department then had the burden of going forward to disprove these claims. The wording of § 22–3206 does not support this contention, for unless the applicant provided the information specified by the police regulations, the requisite showing was lacking.

Petitioner raises several other procedural objections, none of which in our opinion has merit, and only one of which warrants discussion. This objection is directed to the fact that after the public hearing at which petitioner and other persons testified, the Board of Appeals and Review went into executive session. Presumably its ultimate written findings and conclusions were based upon the deliberations which then ensued.

Petitioner contends that this procedure violated § 742 (a) of the District of Columbia Self-Government and Governmental Reorganization Act,[10] popularly known as the "Sunshine Act." Consequently he urges this court to hold that this administrative decision and the subsequent denial of a motion for reconsideration were invalid because the Board did not comply with this subsection.

This is the first time that this court has had to consider the impact of the open meetings amendment, § 1–1503a, to agency actions under the Administrative Procedure Act. To interpret this provision as broadly as petitioner would have us do, would mean that in an adjudicatory proceeding, even though testimony and arguments are entertained in public and the transcript made available to the parties and any interested persons, the members of the quasi-judicial agency when they convene to review the record and discuss possible findings would have to admit the parties and any member of the public to their deliberations. Such a construction of the amended act is not an appealing one. It would effectively prevent the frank exchange of views in private among members of quasi-judicial agencies in reaching a decision—thus putting them on an entirely different footing from appellate courts and juries—to say nothing of federal adminis-

---

7. 21 D.C.Reg. 418 (Sept. 3, 1974).

8. D.C.Code 1973, § 1–1509(b).

9. The relevant portion of which states that the license may be issued by the superintendent of police " . . . if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed."

10. D.C.Code 1975 Supp., § 1–1503a provides in part:

> (a) All meetings (including hearings) of any department, agency, board, or commission of the District government, including meetings of the District Council, at which official action of any kind is taken shall be open to the public. No resolution, rule, act, regulation or other official action shall be effective unless taken, made, or enacted at such meeting.

trative agencies—where experience has shown that the free flow of discussion unimpeded by the presence or reactions of the parties to the controversy has encouraged fair and just results.

We also note that, contrary to petitioner's views, the Corporation Counsel has interpreted the new law as not applicable to the deliberative processes of agencies engaged in adjudication. His opinion was adopted by the Mayor and circulated to the heads of departments and agencies.[11]

In pertinent part, that opinion states:

> The statute pertains to all official actions of an executive or legislative nature, but does not apply to adjudicatory type hearings ("contested cases"). While such adjudicatory proceedings are normally open to the public, except where specific laws provide otherwise, the statute does not require the deliberative processes of the members to be open to the public. These matters are, and continue to be, controlled by the District of Columbia Administrative Procedure Act, which does not require deliberations to be held in public. Also excluded from the coverage of the statute are those incidental actions of the adjudicatory process, such as whether to file charges or take action against a licensee.

■ It is well established that such ". . . rulings are entitled to weight as construction of the District of Columbia Code unless plainly unreasonable or contrary to ascertainable legislative intent." *Williams v. W.M.A. Transit Company,* 153 U.S.App.D.C. 183, 189, 472 F.2d 1258, 1264 (1972). In enacting the "sunshine" provision, Congress expressed no intent at odds with that particular ruling.

■ In his brief in this court, the Corporation Counsel has cited *Dayton Newspapers, Inc. v. City of Dayton,* 28 Ohio App.2d 95, 274 N.E.2d 766 (1971), as well as decisions of other state appellate courts, as supporting his quoted opinion. Because of differences in wording, however, these holdings are not directly in point so far as the statutory provisions drawn into issue here are concerned. Nevertheless we are of the opinion that the limited application of the statute for which the government is contending accurately reflects the Congressional purpose.

We are not persuaded by the one judicial decision cited to us in which a statute very similar to ours was held to apply to quasi-judicial as well as quasi-legislative deliberations. This was a 4–3 holding by the Supreme Court of Florida,[12] to the effect that even when a local school board acts in a quasi-judicial capacity, it is part of the legislative branch of government and hence forbidden by the Florida "sunshine act"[13] to decide a contested suspension case in private after it had gone to hearing.

We have examined both the majority and minority opinions, and deem convincing the reasoning of the minority. Justice Dekle, writing for himself and the other dissenters, made these observations with which we agree:[14]

> The Legislature itself has recognized its grant of quasi-judicial powers to various boards and agencies as "something apart" from those agencies' principle functions, and that they are to be treated in a different manner. This is reflected in the Legislature's adoption of the Administrative Procedure Act, which sets

---

11. Mayor's Memorandum 75–6, Jan. 6, 1975.

12. *Canney v. Board of Pub. Instruction of Alachua Cty.,* 278 So.2d 260 (Fla.1973).

13. Fla.Stat. § 286.011 (1973) reads in pertinent part:

   (1) All meetings of any board . . . at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting.

14. 278 So.2d at 264–265.

forth the procedure (like our court rules) regulating the exercise of that quasi-judicial power granted to the agency. It is apparent that such distinctive quasi-judicial activity was never intended to be melted into an agency's regular duties and responsibilities and thereby treated in a "nonjudicial" manner in its consideration. I believe that the Legislature is as conscious as anyone in preserving private rights and due process of individuals who may come before a board or agency and that the Legislature intended to insure that those rights were afforded in accordance with due process in a judicious manner, as reflected by adoption of the Administrative Procedure Act for state agencies.

The regular activities of an agency and those which are quasi-judicial are altogether different. Those rights of persons and property involved in a hearing should be preserved in a judicial atmosphere which is essential to a fair and impartial deliberation upon the rights involved. To afford less in such a judicial type of proceeding would be a denial of due process and of a fair hearing in which a person's rights and interests are at stake, as much as if he were before a judicial tribunal. We might as well return to the Roman Arena for a "thumbs up or thumbs down" result by the public clamor if we are to eliminate the judicial protections and safeguards in matters of this kind.

\* \* \* \* \* \* \*

The result of depriving an administrative body of free deliberation among themselves, just as a regular judicial body or jury may do, is to shut off the free flow of discussion among them and an exchange of ideas and an open discussion of differing views to the end that a fair and just result may be reached by the body based upon the evidence and arguments at the hearing. Ask any juror. The answer will be that the free interchange and discussion among the group is essential to a fair and just conclusion of the interests before them for decision. This is not the area in which one need fear the alleged "private deals" and extraneous considerations to the matter at hand, so that really the asserted reason undergirding the sunshine law is not present in a judicial deliberation of a matter before an administrative board for a review of judicial character. The basic concept of the "right of the public to know" is fulfilled upon reaching such a fair and just result which is then publicly conveyed. (Footnotes omitted.)

There can be no question that the case before us for review was an agency adjudicatory proceeding, in contradistinction to a legislative or quasi-legislative action. *Cf. Hotel Association v. District of Columbia Minimum Wage and Industrial Safety Board,* D.C.App., 318 A.2d 294 (1974). As it is our considered opinion that the deliberative process incident to final orders in such proceedings is not covered by the so-called "sunshine" amendment, it follows that the challenged orders in this case are not defective either because the Board members arrived at their decision at a nonpublic conference or because no transcript of such conference was made.[15] Accordingly the orders of the Board must stand.

*Affirmed.*

15. D.C.Code 1975 Supp., § 1–1503a(b) provides:

A written transcript or a transcription shall be kept for all such meetings and shall be made available to the public during normal business hours of the District government. Copies of such written transcripts or copies of such transcriptions shall be available upon request to the public at reasonable cost. . . .