**DUPONT CIRCLE CITIZENS ASSOCIA-
TION, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent,**

**Dupont Circle Joint Venture et al.,
Intervenors.**

**No. 10070.**

District of Columbia Court of Appeals.

Argued May 11, 1976.

Decided Sept. 24, 1976.

George F. Bason, Jr., Washington, D.C., for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Norman M. Glasgow, Washington, D.C., with whom Whayne S. Quin and John F. McCabe, Jr., Washington, D.C., were on the brief, for intervenors.

Before KELLY, YEAGLEY and MACK, Associate Judges.

YEAGLEY, Associate Judge:

This is a petition for review of two orders of the District of Columbia Board of Zoning Adjustment authorizing further processing of a planned unit development (P.U.D.). The P.U.D. was originally authorized by the D.C. Zoning Commission by Zoning Commission Order No. 81, dated February 1, 1974, granting approval of the preliminary application, and by Zoning Commission Order No. 101, dated December 12, 1974, granting approval of the final application. Petitioner sought review of each of the foregoing orders in this court. They were affirmed by our order of January 19, 1976, which was followed by a written opinion. *See Dupont Circle Citizens Association v. District of Columbia Zoning Commission,* D.C.App., 355 A.2d 550 (1976).

Based upon the approval of the Zoning Commission, two owners of the property in the P.U.D. applied for further processing before the Board of Zoning Adjustment pursuant to § 7501.4 of the Zoning Regulations. Both applications met the approval of respondent District of Columbia Board of Zoning Adjustment, and petitioner, Dupont Circle Citizens Association appealed. We affirm.

The relevant details relating to this planned unit development and the proceedings before the Zoning Commission are set out in full in our previous opinion and need not be restated here. *See* 355 A.2d at 552–53. Suffice it to say that the Commission's order constituted a detailed approval of the application. In its order the Commission said:

The final approval of this preliminary application for a planned unit development is in accordance with the Zoning Regulations of the District of Columbia, as amended, and the Zoning Act (Act of June 20, 1938, 52 Stat. 797), as amended.

It added that it "ORDERS APPROVAL of said final application for a planned unit development and related zone change, sub-

ject to the elements, conditions, and guidelines hereinafter set forth" (emphasis in original). After specifying sixteen conditions and guidelines the order ended:

The applicants shall submit the stages and schedule of development with the application for further processing before the Board of Zoning Adjustment.

This court found no error in the proceedings before the Zoning Commission.

## I.

The application of Arthur H. Keyes, Jr., to the B.Z.A. for further processing under article 75 of the Zoning Regulations sought permission to make additions and modifications to the first floor and mezzanine levels of the Sunderland Building in implementation of guideline 2 of the order of the Commission. In that guideline the Commission provided "that certain minor modifications may be made to the Sunderland Building, as shown on Exhibit 7 A, B, C & D of the public hearing." The Board of Zoning Adjustment held a public hearing on April 16, 1975, and issued an order approving the development proposals, finding them to be consistent with the plans and guidelines as approved by the Zoning Commission. With regard to the Sunderland case, petitioner asserts only one allegation of error: that the Board failed to give adequate notice of the hearing. Hence it is necessary to determine whether the various notices given by the Board complied with the statute.

Pursuant to 22 DCRR § 3.32, the Board gave notice in the following ways: (1) by publication in *The Washington Star,* a daily newspaper of the District of Columbia (§ 3.321), (2) by mailing notice to the applicant and to the owners of all property abutting the property involved in the application (§ 3.322), (3) by mailing notice to the "occupants" of property situated within 200 feet of the property (§ 3.323), (4) by posting notice in the office of the B.Z.A. (§ 3.324), and (5) by posting notice on the property itself (§ 3.33). Petitioner alleges

that the third type of notice listed above is not adequate where, as was done here, the notice was merely stamped "Occupant" and mailed to each particular address on a list supplied by the applicant.

We find this type of notice to be troublesome since a question exists whether it could reasonably be presumed to reach the persons sought to be reached. However, we need not decide that issue in this case. Such notices technically were as required by regulation 3.323, and we are provided no evidence that any such "occupant" was prejudiced or complained of a lack of notice. Since the petitioner had *actual* notice of the hearing, as we find *infra,* it cannot now be heard to complain of such a hypothetical deficiency.

First of all, petitioner knew that there would be a hearing before the Board of Zoning Adjustment since paragraph 17 of Commission Order No. 101 provided: "The applicants shall submit the stages and schedule of development with the application for further processing before the Board of Zoning Adjustment."

The Board of Zoning Adjustment keeps a mailing list of interested individuals and organizations who are sent notices of all Board hearings, including the hearing under consideration, in the form of an advance copy of the monthly public hearing calendar. Petitioner, Dupont Circle Citizens Association, is on that mailing list and at oral argument admitted that it received the particular calendar involved.

In addition, a representative of petitioner was present at the opening session. At the beginning of the meeting when the Board inquired into the status of the petitions for review of the Zoning Commission orders granting the P.U.D., Mrs. Catherine McCarron sought to be heard by the Board. After a brief exchange the following dialogue transpired:

CHAIRMAN SCRIVENER: . . .

Do you, as the representative of the Dupont Circle Citizens Association, the

plaintiff in the D.C. Court of Appeals case, object to the hearing of this case this afternoon?

MRS. McCAREN [*sic*]: Yes.

CHAIRMAN SCRIVENER: Why?

MRS. McCAREN [*sic*]: We say this, we are not taking part in a case or in a hearing today that involves a case for zoning which we claim is illegal.

We conclude that petitioner had actual notice of the hearing and cannot now complain of any asserted defect in notice. As the Maryland Court of Appeals has noted in *Clark v. Wolman,* 243 Md. 597, 221 A.2d 687, 688 (1966):

> The law, in its majesty, is not designed to require futile action or idle gestures. It is well settled that notification *purposed to inform* may be replaced by actual knowledge. 1 Merrill, Notice, 480. And this is especially so when the knowledge has been acted upon without reliance upon the notification's absence or its defects. Ibid.; *Cassidy v. Baltimore County Board of Appeals,* 218 Md. 418, 146 A.2d 896; 2 Merrill, Notice, 384, 444. [Emphasis in original.]

## II.

We turn now to a consideration of B.Z. A. Application No. 11901, the application by intervenors for further processing of the planned construction of the new office building in the P.U.D. Petitioner alleges several grounds for error which it says require reversal, each of which, we reject.

The first of these relates to the D.C. Conflict of Interest Statutes, D.C.Code 1975 Supp., § 1–1181. Petitioner asserts that this statute required the disclosure of the names of the applicant-intervenor's partners and financial backers and that the Board should have demanded that these persons be disclosed. We do not agree.

■ There is no provision in the Conflict of Interest and Disclosure Act that either authorizes or requires the Board of Zoning Adjustment to compel the disclosure of the partners or the financial backers of parties before it. The entire thrust of the statute is directed at the individual governmental official and the onus is on him to decide whether the action he is to take "would affect directly or indirectly his financial interests or those of a member of his household . . . ." D.C.Code 1975 Supp., § 1–1181(g). The Code provision presumes that the official knows the nature and extent of his and his family's financial interests.

We note that petitioner has not alleged any conflict of interest on the part of any of the Board members. Indeed, there is not even a hint of any impropriety.

## III.

■ Petitioner also alleges that the Board's failure to grant its motion to open to the public the executive meeting at which the final decision was made was error requiring reversal. Petitioner grounds this allegation on two statutory provisions. One is the relatively new Sunshine Act, D.C.Code 1975 Supp., § 1–1503(a), which provides *inter alia*:

> All meetings (including hearings) of any department, agency, board or commission of the District Government, . . . at which official action of any kind is taken shall be open to the public. No resolution, rule, act, regulation or other official action shall be effective unless taken, made, or enacted at such meeting.

We note preliminarily that the decision made here in executive session was a quasi-judicial action in which, historically, only the voting members play a role. The quasi-judicial function of an administrative agency differs completely from the nature of its other activities. The personal and property rights of the parties, at issue in such proceedings, can only be protected, under the American system, in a judicial atmosphere that assures freedom of expression to each deciding official and en-

courages a free discussion and exchange of views which is so essential to frank and impartial deliberation.

This court recently interpreted the Sunshine Act in *Jordan v. District of Columbia,* D.C.App., 362 A.2d 114 (1976). We held there that to open all meetings to the public

> would effectively prevent the frank exchange of views in private among members of quasi-judicial agencies in reaching a decision—thus putting them on an entirely different footing from appellate courts and juries—to say nothing of federal administrative agencies—where experience has shown that the free flow of discussion unimpeded by the presence or reactions of the parties to the controversy has encouraged fair and just results. [362 A.2d at 117.]

The *Jordan* decision is controlling as to the application of the Sunshine Act.

■ The other provision, relied on by petitioner, is D.C.Code 1973, § 5–420 which provides that "[a]ll meetings of the board [of Zoning Adjustment] shall be open to the public." While at first blush this section might seem to compel the result sought by petitioner, upon consideration of the statutory language it appears that such a result was not intended.

The Maryland Court of Appeals in *Sullivan v. Northwest Garage & Storage Co.,* 223 Md. 544, 165 A.2d 881 (1960), dealt with virtually identical statutory language and approved decisions made at executive sessions of the Board of Municipal and Zoning Appeals held after the hearing concluded. The court held that the statute required public meetings in adversary proceedings, but not for deliberations of the zoning board when a decision is to be reached. The court saw differences between the term "meetings" which the statute commands are to be public and other proceedings which need not be, and observed:

> [The statute] directs the Board to keep minutes of its "proceedings," which gives the impression that the Board is to function outside of a meeting or hearing, particularly since there is the further language that the Board shall keep records of its "examinations" and "other official actions." All of these things, the minutes, the records of the examinations and the records of other official actions are stated to be public records. [165 A.2d at 883.]

These sections of the Maryland Code are quite similar to our own Code (*see* D.C. Code 1973, § 5–420). The Maryland court went on to say that "[t]he weight of such authority as there is supports our conclusion that the hearings of the Board must be public but that the deliberations of the Board after the hearing is completed may be in private." (165 A.2d at 884, citations omitted.)

We find the decision of the Maryland court to be persuasive and consistent with our holding in *Jordan v. District of Columbia, supra,* and we adopt its reasoning for the District of Columbia. Accordingly, we conclude that neither of the aforementioned Code provisions requires that the conference at which the Board considers and decides a case to be public. To hold otherwise would permit outside pressures to substantially affect Board decisions and in view of our traditional concepts of due process would raise a question as to the constitutionality of such a provision.

## IV.

■ Petitioner also questions the propriety of one Board member voting by proxy in favor of the application for the P.U.D. The executive session to decide this case was called by a quorum of the full five-member Board, three members then being present. (Messrs. Harps and McIntosh and Ms. Cummings.) The minutes of the Board show that Chairman Scrivener was absent from the meeting but had "cast his proxies for cases heard on June 18, 1975."

The following notation appears in the minutes of the session regarding the vote of the members who heard the case:

> On motion made, duly seconded and carried by a vote 3–1–0 (Mr. Klauber not voting, not having heard the case, Lilla Burt Cummings, Esq., dissenting . . .) to GRANT the above application.

Petitioner asserts that nothing in the D. C. Zoning Act nor in any regulation or rule of the B.Z.A. permits proxy voting and hence Chairman Scrivener's vote was not valid and should not be counted. Accordingly, petitioner argues that the approval is illegal and requires reversal. This contention is based on language in D.C.Code 1973, § 5–420 which requires that a clear majority of the Board must approve the application.

Chairman Scrivener had been present at the hearings and heard all of the testimony. He did not designate someone else to vote for him rather he cast his vote in absentia and the Board accepted it. It appears that the Board has recognized the validity of such method of voting for many years. There is no prohibition against voting by proxy in the Code or in the regulations of the Board, and actions of the Board must be accorded a presumption of regularity. K. Davis, Administrative Law Treatise § 11.06 (1958). The Circuit Court has said that when administrative officials purport to decide weighty issues within their domain there is a "strong presumption of regularity [which] supports the inference that . . . they have conscientiously considered the issues . . . ." *Braniff Airways, Inc. v. C. A. B.*, 126 U.S.App.D.C. 399, 406, 379 F.2d 453, 460 (1967). D.C. Code 1973, § 5–420 provides *inter alia* that "[t]he concurring vote of not less then a full majority of the members of the board shall be necessary for any decision or or-

der." In the instant case a quorum was present as required and the action of the Board in casting and counting votes of its members was not contrary to the law or the regulations of the Board.

Regarding the practical aspects of the operational problems of such a board, Professor Anderson observed:

> As members of the board of adjustment receive little, if any, compensation, they are not in any sense full-time employees of the municipality. Rather, they are citizens who earn their livings at various tasks, and who take time on certain days to render a public service. Their occasional absence is predictable, and some procedural concessions have practical justification. [3 R. Anderson, American Law of Zoning § 16.46 (1968) (footnote omitted).]

## V.

Petitioner's final allegation of error is that the Board improperly confined the scope of its public hearing, and thus it was unjustifiably prevented from presenting exhibits and testimony in opposition to the P.U.D. In addition it asserts that it was not permitted to adequately cross-examine the witnesses put on by the applicant and by the government and hence it was denied due process of law and rights under the D.C. Administrative Procedure Act, D.C. Code 1973, § 1–1509(b).[1]

An examination of the Zoning Regulations, however, does not lend support to petitioner's claim. Regulation § 7501.4 provides for further processing of a planned unit development after it has been approved by the Zoning Commission. The Board's consideration is limited to the matters which are mentioned in that section. It may not go back and reconsider the merits of the case as ruled upon by the

---

1. D.C.Code 1973, § 1–1509(b) provides *inter alia*:

Every party shall have the right to present in person or by counsel his case or defense by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. . . .

Zoning Commission nor may it modify the plans except in certain limited ways.

■ The applicants submitted plans to the Board based upon the Zoning Commission's order and virtually identical to those approved by the Commission. The applicants purposely attempted to avoid changes in order to accelerate the decision-making process.

The Zoning Division of the Municipal Planning Office, in its report to the Board as to its approval of the application observed: "It is the responsibility of the Board under Paragraph 7501.43 'to implement the planned unit delevopment as finally approved by the Zoning Commission.'" The report also stated:

This application requests approval for one section of a PUD. Paragraph 7501.42 provides that a PUD may be submitted for further processing to the Board in one or more sections. The plans as submitted by the applicant have been compared to the plans cited in Condition No. 14 of Order No. 101 and to the other conditions contained in that Order. The plans are identical to those submitted to the Zoning Commission except that dimensions have been added to some of the drawings. The proposed building, however, fails to meet two conditions of Order No. 101, as follows:

1. The plans include 160 parking spaces. With a gross floor area of 301,434 square feet, at a rate of one parking space for each 2,000 square feet of gross floor area (Condition No. 8), only 151 parking spaces should be provided.

2. The plans show a penthouse on the roof extending 17 feet above the level of the roof, with an elevator override extending five feet beyond that. Condition No. 6 limits the height of *any*

room structure to 17 feet above the level of the roof.

The plans as submitted conform to all the other requirements of Order No. 101.

We conclude that this assessment of the nature and extent of the issues facing the Board is correct. All other matters had been resolved by the order of the Zoning Commission. The Board properly limited the scope of its hearing to those matters as provided in § 7501.4 *et seq.* of the Zoning Regulations. Though petitioner attempted to reopen many of the issues decided by the Zoning Commission, it was properly prevented from doing so by the Board.

■ Petitioner asserts, however, that § 7501.47 of the Zoning Regulations[2] requires the Board to make its own specific findings on each of the matters upon which the Zoning Commission had previously ruled in its final approval order. We do not agree. Section 7501.47 must be read in the context of the other provisions in § 7501.4 *et seq.*, defining the scope of its review. It does not demand findings as to *each* requirement of § 7501.39 but only findings "related to" the matters listed in that section. It is a limitation on the scope of review and not a grant of authority.

The Board's findings were all germane to one or more of the provisions of that section. The Board found in Finding No. 11 that the applicant had "complied with the requirements of Section 7501.39 of the regulations." In Finding No. 7 the Board found that it was merely implementing the Zoning Commission order "with no amendments", and in No. 8 it found the plan to be "in harmony with the objectives of Section 7501 . . . ." In light of the narrow issues to be decided by the B.Z.A. we find no error in the rulings of the Board limiting the scope of petitioner's evidence. We conclude also that the findings

2. D.C. Zoning Regs. § 7501.47 provides: "Before approval of the final development plan, the Board shall make findings related to the requirements of paragraph 7501.-39." Section 7501.39 requires that the final application for the P.U.D. before the Zoning Commission include nine enumerated items about the specifications of the P.U.D.

were sufficient to meet the requirements of § 7501.47.

Petitioner alleges, however, that a "radical change in circumstances" had occurred between the time of Zoning Commission Order No. 101 and the Board's public hearing thus necessitating the complete reopening of the case.[3] We do not find that the proffer of petitioner in this regard supported its position.

■ Finding no other allegations of error warranting discussion,[4] the orders appealed from are

*Affirmed.*

3. According to petitioner this "radical change in circumstances" included: (1) "the elected D.C. City Council now has significant responsibility over 'a comprehensive, consistent and coordinated [zoning] plan for the National Capital'"; (2) "two new rezoning decisions by the Zoning Commission itself . . . which are totally at variance with and irreconsilable [sic] with this PUD application;" (3) "a new comprehensive planning study by the City's official Planning Office which also is totally at variance with and irreconcilable with this P.U.D. application;" (4) "a new study by the D.C. Department of Environmental Service which shows pollution already at hazardous levels at the site of this proposed PUD;" and (5) "testimony before the Board in another case by the applicant's own traffic expert which is totally contradictory to his earlier testimony . . . ".

4. In its brief petitioner also incorporated "by reference all the points heretofore raised" in the prior cases before this court (Nos. 8237 and 9159, D.C.App., 355 A.2d 550). Petitioner does not say what it wishes us to do with these incorporated "points"; but it makes little difference since the court's resolution of issues raised in that case are, of course, the law of the case on any of the same matters raised here. The arguments which petitioner raises to the contrary in its shotgun approach to this case are specious.