CLARK ET AL. *v.* WOLMAN ET AL.

[No. 61, September Term, 1966 (Adv.).]

*Decided July 25, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Jerome F. Connell* for the appellants.

*W. Harvey Beardmore,* with whom were *James C. Morton, Jr.,* and *Rouse, Morton & Beardmore* on the brief, for the appellees.

PRESCOTT, C. J., delivered the opinion of the Court.

Judge Evans, in the Circuit Court for Anne Arundel County, upheld a decision of the Mayor and Aldermen of the City of Annapolis (the City) classifying (or reclassifying) appellees' property, and the appellants, nearby property-owners, appealed.

Three questions are presented: (1) do appellants have standing to contest the City's action; (2) did the failure of an of-

ficial to comply, literally, with the ordinance provisions relative to notification invalidate the City's action; and (3) was the evidence produced at the hearing such as to render the City's decision to classify the property RBX not fairly debatable, and therefore arbitrary and capricious?

The appellees own about 33 acres located at Carrollton and Clairbourne Roads in the City of Annapolis. It originally was zoned "agricultural" under the County's zoning. Around June 1, 1964, the property was annexed to the City of Annapolis, which had, and has, no "agricultural" classification in its zoning ordinances. On July 20, 1964, appellees petitioned the City for an RBX classification (to be developed with garden apartments, with parking). A public hearing was conducted by the City, at which evidence was produced by the petitioners and the protestants. After the hearing, the City adopted a resolution granting the petitioners' request. Appellants then filed a bill of complaint in the Circuit Court seeking to have said resolution set aside as being "unconstitutional, illegal and void." After due consideration, Judge Evans, as stated above, upheld the City's action and this appeal followed. More facts will be given under the individual contentions presented.

I

The appellees argue that appellants have no standing to prosecute this appeal because none of them is a resident or taxpayer in the City, although they own property "contiguous to the property sought to be rezoned * * *." They contend that residents and taxpayers of one political subdivision have no right to challenge a zoning ordinance of another political subdivision. For the purposes of this appeal, we shall assume, without deciding, that appellants do have standing.

II

Appellants' brief states "Section 26-59 (c) of the Code * * * of Annapolis provides that notice shall be sent to the property owners within 175 feet" of the subject property. The ordinance was not offered in evidence and is not included in the record extract. Appellees urge that the ordinance is not properly before us. In the recent case of *Strickler v. Board of County Commissioners,* 242 Md. 290, 298, we rather specifically cautioned

members of the bar that, ordinarily, ordinances which are to be relied upon shall be offered in evidence. However, in the view that we take of the case at bar, we shall extend, again, the warning, and assume, without deciding, that the ordinance is before us.

Appellants' argument here is rather technical and specious in nature. They claim that appellants Thomas D. Clark and Betty F. Clark, his wife, should have received *written* notice of the hearing by the City, and the failure to give them such *written* notice invalidated the City's action. However, they not only received constructive notice (by newspaper publication), but they also obtained *actual* and written notice from a property owners association. In addition, Mr. Clark saw the posted sign on the property sought to be classified, which also notified of the date of the hearing. As a matter of fact, Mr. Clark attended the hearing, where, according to his own admission, he was accorded the right to be heard, but made no protest. Mrs. Clark, although she had actual knowledge of the hearing stayed at home to look after the children.

The law, in its majesty, is not designed to require futile action or idle gestures. It is well settled that notification *purposed to inform* may be replaced by actual knowledge. 1 *Merrill, Notice,* 480. And this is especially so when the knowledge has been acted upon without reliance upon the notification's absence or its defects. *Ibid.; Cassidy v. Board of Appeals,* 218 Md. 418; 2 *Merrill, Notice,* 384, 444.

In the instant case, the required notice to property owners within 175 feet was for the purpose of informing them of the hearing on the requested change. They had actual knowledge thereof and acted upon that knowledge. We hold that under the circumstances, Mr. and Mrs. Clark lost nothing from the failure to receive written notice of the hearing, and this failure did not invalidate the City's action.

### III

Judge Evans ably summarized the evidence, to which we make one or two slight additions, thus:

"Jack L. Carr, Planning Director [who also recommended granting petitioners' request], read a letter

dated 21 September 1964 from the City Planning and Zoning Commission to the Mayor and Aldermen wherein the following is stated:

"After hearing the presentation by the petitioners at its regular meeting of September 3, the Planning Commission met in executive session on September 15 and voted unanimously to recommend to the Mayor and Aldermen that the request for reclassification be approved. The following reasons were set forth in support of this recommendation:

"Annapolis has, over the past two or three years, experienced changes in its growth characteristics such that a pattern of mixed single-family and multi-family residential areas has been found to be complementary. This is particularly the case where multi-family 'garden apartments' have been introduced into relatively self-contained, undeveloped areas which do not lend themselves readily to extended single-family unit subdivision. These growth characteristics are certainly evident in the fifth and sixth wards of the City where there are substantial tracts of otherwise by-passed land severed by a peripheral street circulation system and by community facilities and municipal services of more than sufficient capacity to absorb the additional service required of them.

"Mr. Edmund W. Dreyfus, an architect and part owner of the tract being discussed, then presented a schematic plan of the proposed apartment group showing a density of 16 units per acre. When asked about the proposed price range, Mr. Dreyfus answered, 'Well, we feel that this project being located as it is, adjacent to a golf course and a very low density occupancy area, will command a higher rental than anything to my knowledge that now exists in the Annapolis area.' Mr. Dreyfus further stated that a total of 528 units are proposed.

"Mr. Maurice Ogle, a professional real estate appraiser and consultant, was acknowledged to be an expert by the Mayor and Aldermen. Mr. Ogle stated

that, in his opinion, there was a mistake when the property was originally zoned for agricultural use. After much amplification, Mr. Ogle further stated that even had there been no mistake in the original zoning, there would be ample justification to rezone the property as requested on the basis of change."

In support of his opinion that a mistake had been made in the original zoning, and sufficient change had occurred to justify the requested classification, Mr. Ogle, *inter alia,* stated:

"This was 1952. The zonings that have been required since 1952 to actually meet the needs of the district, are these: (pointing to map). All of these commercial zonings, industrial zonings, these vast areas of residential zonings. You will note within the one mile range there have been three additional commercial zonings, one of which is a light commercial zoning, that is only about five or six hundred foot distance from the subject property. So I think that we can clearly see that in 1952, no one had a crystal ball that would enable them to anticipate all of the need of Arundel County and particularly of this district in its proximity to Annapolis. Now this second map, (looking at map) or third rather, is your own city map, the yellow area there, can you all see this? (indicates the subject property). These areas which are colored in red are changes within the area. All of this area, now have been zoned within that area. All of this area, now have been zoned RB, RBX, in here is the community shopping center zoning, RBX zoning, Commercial zoning, Community Shopping Center zonings, and down here, are three uses in the county, in the second district, two uses, excuse me, which are Carrs and Sparrows Beach, which for some reason, mistakenly in my opinion, in 1952 were overlooked in zoning. These are nonconforming uses which would require today a heavy commercial zoning for this particular use. So these do abut the subject property. * * *. So I think it is quite evident that there

was an oversight and a mistake in the original zonings, some, forty some acres have been zoned since that time for apartment use, there have been thirty-six (36) acres zoned, excuse me, forty-two acres zoned for community shopping center, all within one mile of the subject property."

We again turn to Judge Evans' summarization:

"Mr. Ridgely Gaither, President of Annapolis Roads Property Owners' Association, then questioned the adequacy of the roads serving the subject property. Mr. Carr replied that the matter of street connections is a necessary prerequisite for planning development approval, but that it cannot be made a part of the decision to rezone. He stated, however, that it would be made a part of the subdivision requirements at the time of development since all such developments must be on a paved city street.

"Mr. Milton Cooper, a property owner, then echoed the objection that the roads could not handle the resultant new traffic adequately. Next Mr. A. J. Curbo, Chairman of the Zoning Committee for the Bay Ridge Civic Association, made a plea for proper over-all planning. Mr. Theodore Davis then stated that Carrollton Road would be overcrowded if the apartments were constructed.

"Mr. George Shapiro then made a protest concerning the improper placement of the notice-of-hearing sign. Mr. Carr then interjected and said that the sign was properly placed within the City of Annapolis as required by the applicable city ordinance. Mr. Shapiro then made an objection that the number of children attending Tyler Heights School would be greatly increased and that, as a result, the school would become grossly overcrowded. In reply, Mr. Ogle presented statistics showing that, in all probability, single-family dwellings would put a greater burden on schools than would the proposed apartments.

"The next four protestants, Mrs. Ruth Cooper,

Joseph Percel, Emory Rice and Pete Nelis merely echoed previous objections. The meeting was adjourned without further discussion."

After reciting the above facts, Judge Evans held that the action taken by the City in approving the requested classification was not arbitrary or capricious, without specifically stating the test which he applied in reaching his conclusion, for instance, mistake, change, or an original classification of newly acquired territory as an addition to the City's comprehensive plan (with the last category containing the dual aspects of whether there was a mistake therein or an arbitrary and capricious classification). And neither the record extract or the briefs reveal the grounds upon which the City based its action in passing the resolution mentioned above.

It will be noted that the case has some unusual aspects. The subject property was annexed when it had an "agricultural" classification by the county. However, the City has no such classification. We are not informed whether the annexation statute attempted to deal with the problem now presented. It developed at the hearing that in this and prior cases of annexation the annexed property was considered by the City as remaining in the category of its prior classification (seemingly with the county regulations prevailing) until changed by it. Cf. Code (1957), Art. 23A, § 19 (p), and *City of Annapolis v. Kramer,* 235 Md. 231.

However for the purposes of this appeal, we find it unnecessary to determine the precise test that should have been applied by the City in deciding to grant the petitioners' request, or by Judge Evans in measuring the evidence to determine its sufficiency to support the City's resolution. With no directions in the annexation act or the zoning regulations, we think it should have been one of the four named above—original mistake, change in conditions, mistake or arbitrary classification of newly acquired territory—or a combination of two or more of them. The petitioners definitely proceeded upon the theory of original mistake and change in conditions. We have applied all four of the tests to the evidence, and it is sufficient, we think, to make any one and all of the four possible issues fairly de-

batable; hence, we cannot say the resolution was arbitrary or capricious. In this situation, as the courts do not zone or re-zone, we must affirm.

*Decree affirmed, with costs.*