DUPONT CIRCLE CITIZENS
ASSOCIATION, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF
ZONING ADJUSTMENT, Respondent,
Temple Realty, Inc., Intervenor.

No. 12473.

District of Columbia Court of Appeals.

Argued May 9, 1978.

Decided June 20, 1979.

Frederic R. Kellogg, Washington, D. C., for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., adopted the brief of intervenor, for respondent.

Charles R. Donnenfeld, with whom Paul A. Kaplan, Washington, D. C., was on brief, for intervenor.

Before NEWMAN, Chief Judge, and NEBEKER and FERREN, Associate Judges.

NEBEKER, Associate Judge:

The Board of Zoning Adjustment granted a special exception to intervenor for the construction of a professional office building at 1916–1922 N. Street, N.W., which is located within a special purpose district. Petitioner urges four grounds for reversal: (1) improper notice, (2) inadequate and un-

supported findings of fact and conclusions of law, (3) the Board's failure to give "great weight" to the issues and concerns raised by the Advisory Neighborhood Commission (ANC) and (4) an erroneous voting procedure. We reverse on the first ground and remand for further proceedings. The facts will be stated as they become relevant to the discussion.

## I. Standing

■ Petitioner complains that the Board violated its notice rule by misidentifying the property and by not notifying the "occupants of property situated within" 200 feet of the intervenor's property. 22 DCRR § 3.3. The intervenor contends that petitioner, having had actual notice of both the subject property and the hearing, has no standing to assert the alleged failure to notify other persons. *Dupont Circle Citizens Association v. District of Columbia BZA*, D.C.App., 364 A.2d 610, 612 (1976). The Board, having adopted the intervenor's brief rather than filing a separate brief, originally contended that the petitioner lacked standing. However, in a supplemental memorandum regarding standing, the Board altered its stance and now concedes that the petitioner has standing. All agree that the petitioner had actual notice.

The petitioner claims that the Board violated its notice requirements by, *inter alia*, not notifying the "occupants of property situated within" 200 feet of the intervenor's property. The relevant regulation provides:

3.32 Notice of the public hearing shall be given by the Secretary of the Board within thirty (30) days but not less than ten (10) days before the date of the hearing, as follows:

\* \* \* \* \* \*

3.322 By mailing the notice to the applicant and to the *owners* of all property abutting the property involved in the application.

3.323 By mailing the notice to the *occupants* of property situated within two hundred (200) feet of the

property involved in the application.

[22 DCRR § 3.32 (emphasis added).]

The Board mailed notice, addressed to "occupant," to each address of an improved property within 200 feet of the subject property. Four of the addresses were to apartment houses, yet only one letter was sent to each address. The petitioner states that this mailing did not comply with § 3.323, which specifies "occupants" rather than "owners," cf. 22 DCRR § 3.322 (quoted supra), or "addresses."

The intervenor contends that the petitioner lacks standing to raise the notice issue because it had actual notice of the hearing. *Dupont Circle Citizens Association v. District of Columbia BZA, supra* (unrelated to the present action). In *Dupont*, the Board mailed "notice to the occupants of property situated within 200 feet of the property ([in attempting to fulfill] § 3.323)," which is identical to the mode of notice here. As here, the petitioner alleged in *Dupont* "that the third type of notice listed above is not adequate where, as was done here, the notice was merely stamped 'Occupant' and mailed to each particular address on a list supplied by the applicant." *Id.* This court did not reach the merits of the allegation, but disposed of the issue by holding that the petitioners lacked standing:

> We find this type of notice to be troublesome since a question exists whether it could reasonably be presumed to reach the persons sought to be reached. However, we need not decide that issue in this case. . . . Since the petitioner had *actual* notice of the hearing, as we find *infra*, it cannot now be heard to complain of . . . a hypothetical deficiency. [*Id.* at 612 (emphasis in original).]

Thus, the court concluded, one with actual notice has no standing to assert any deficiency regarding notice to another.

Espousing a view contrary to that underpinning *Dupont*, we reversed in an Alcoholic Beverage Control Board case in an analogous situation. *See Kopff v. District of Columbia ABC Board*, D.C.App., 381 A.2d 1372, 1382–83 (1977), *rehearing denied* (1978). The ABC Board was statutorily required to post notice of a hearing and was bound by its own regulations to notify remonstrants, if known to the Board. *Id.* When the Board rescheduled a hearing on an application, it neglected to post notice and to notify the remonstrants listed on a petition supplied to the Board by the Kopffs, although the Board did notify the Kopffs. *Id.* at 1374. The Board and the intervenor

> [argued] that actual notice to all petitioners present at the rescheduled hearing cured the . . . defect, that the notice mailed to Mrs. Kopff sufficed for all other known remonstrants, and that "no person allegedly without notice has appeared in protest." [*Id.* at 1382.]

We held that the Kopffs were the agents of neither the Board nor the remonstrants, so far as the regulatory requirement was concerned, and that the Board therefore could not "shift to private persons its responsibility for the notification." *Id.* at 1383. In rebutting the claim that actual notice to those present at the hearing "cured the . . . defect," the court stated the following, which we believe to be of sufficient value to quote at length:

> [A]ctual notice to individuals who did appear cannot remedy the lack of notice either to those who were known but not apprised of the rescheduling, or to those who might have seen an accurate "posting" on the premises—but did not. Absent potential witnesses remain prejudiced. Accordingly, the Board violated both its duty to notify "known remonstrants," . . . and its duty to post notice on the premises. . . . Neither deficiency could be cured by actual notice to those who appeared.
>
> . . . The argument that "no person allegedly without notice has appeared in protest" is illogical. We cannot expect unnotified individuals to petition for review of an ABC Board decision of which they still may not be aware. We hold, therefore, that in failing to give the notices required by D.C.Code 1973, § 25–

115(b) and 3 DCRR § 20.1, the Board did not afford all potentially concerned individuals an adequate opportunity to be heard. As a result, the Board's capacity [to render an informed decision] was impaired. We shall not speculate about how many more would have attended the hearing if proper notice had been given, or about whether additional attendance would have contributed to the dialogue. That is irrelevant. Because a statutory right to due notice has been violated and cannot be cured until everyone receives notice, the error cannot be deemed harmless.[21]

[21] The reference in the Board's findings of fact to the paucity of witnesses who appeared to oppose the license implies a possibility that a greater number of opponents could have influenced the Board's decision. Rec. at 274, ¶ 40.

[*Id.* at 1383.]

As we view *Kopff* and *Dupont* in juxtaposition, their incongruity appears obvious. Whereas *Dupont* states that actual notice disqualifies a party from raising the lack of notice to another, *Kopff* notes that a party without actual notice could hardly be expected to appear at the proceeding to raise the issue. We note at this point that the parties in *Kopff* failed to cite the *Dupont* standing holding and that the *Kopff* opinion makes no reference to it.

Despite this incongruity, the cases relied upon, in each opinion, are consistent. In holding that the petitioner lacked standing in *Dupont*, we quoted from *Clark v. Wolman*, 243 Md. 597, 221 A.2d 687, 688 (1966):

The law, in its majesty, is not designed to require futile action or idle gestures. It is well settled that notification *purposed to inform* may be replaced by actual knowledge. 1 Merrill, Notice, 480. And this is especially so when the knowledge has been acted upon without reliance upon the notification's absence or its defects. Ibid.; *Cassidy v. Baltimore County Board of Appeals*, 218 Md. 418, 146 A.2d 896; 2 Merrill, Notice, 384, 444. [364 A.2d at 613 (emphasis in original).]

While we agree with the Maryland case, it does not mandate the result reached in *Du-*

*pont.* The Clarks were assumed to have standing to assert the notice issue. *Id.* at 599, 221 A.2d at 688. They claimed that because they did not receive *written* notice, as required by city ordinance, the zoning action should be set aside. The court stated that because they had actual notice, and were not prejudiced by reason of their failure to receive written notification, the zoning action should not be set aside. The characteristic distinguishing *Clark* from *Dupont* is the assertion of one's *own* rights in *Clark* as distinguished from the assertion of *another's* rights in *Dupont.* We employed essentially the same rationale in *Kopff* to differentiate the facts there from the facts of *Schiffmann v. District of Columbia ABC Board*, D.C.App., 302 A.2d 235 (1973):

[I]n *Schiffmann* . . ., this court held that actual notice to the petitioners cured, as to them, any failure to give notice by publication. Petitioners here, however, do not assert a lack of notice to themselves. They assert the rights of those who were entitled to notice but did not receive it and, as a consequence, did not appear at the hearing. [381 A.2d at 1383.]

Therefore, the foundation of *Kopff* and *Dupont* is identical; the point of departure lies in the interpretation of the underlying cases.

By a strict interpretation, the holdings of *Kopff* and *Dupont* do not conflict. The language of *Dupont*, that the petitioner "cannot . . . be heard to complain," indicates that the holding was based upon the petitioner's lack of standing rather than whether the notice was adequate. 364 A.2d at 613. By contrast, the holding of *Kopff* was expressly not based on standing. 381 A.2d at 1383 ("[r]espondents do not challenge petitioners' standing to assert these rights"). Nevertheless, the discussion and extensive quotations above demonstrate a fundamental inconsonance between the two opinions. Each opinion bears on the case before us.

■ We endorse our prior position as expressed in *Kopff*, and therefore hold that

the petitioner has standing to raise the notice issue. A contrary position would provide an inadequate opportunity to enforce the notice provisions. While injury in fact is generally required for standing, *see, e. g.*, *Warth v. Seldin*, 422 U.S. 490, 499–501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the very purpose of the notice provisions obviate the need for this requirement for standing to challenge compliance with notice specifications. One without notice is rarely in a position to complain of his ignorance, being unaware of the ignorance. As a matter of practical necessity, one with actual notice must be endowed with the power to compel compliance. An agency could otherwise largely disregard its notice regulations during the hearing proceedings, knowing that it may avoid judicial review by asserting the lack of standing of the opponents of its action.

In *M. A. P. v. Ryan*, D.C.App., 285 A.2d 310 (1971), we noted that, "[a]s a matter of internal policy, . . . no division of this court will overrule a prior decision of this court . . . and that such [a] result can only be accomplished by this court en banc." *Id.* at 312 (footnote omitted). The full court is aware of the situation created by *Dupont* and *Kopff*, as explained above, and of the disposition of this case with regard to the issue of whether standing may transcend the reception of actual notice. All members of the court are mindful of the primary need for ˅decisional uniformity among divisions of the court. On the other hand, it cannot be gainsaid that en banc consideration consumes judicial resources which are already spread thin. It is in an effort to accommodate these two conflicting considerations that the division has proposed resolving this particular decisional conflict without formal en banc consideration. This method of resolution in no way abandons the *M.A.P.* rule or compromises the rule on uniformity of decision. Non-division members of the court are able to be confident of the soundness of the analysis and decision of the division, without formal en banc consideration. Since no member of the court has requested formal en banc consideration and no member has objected

to our adherence of *Kopff* on the standing issue, this decision may be deemed to comport with *M.A.P.*; it effectively overturns the *Dupont* standing holding.

II. Adequacy of the Notice

██ As to whether the notice complied with § 3.323, we note that our scope of review is limited. *See* D.C.Code 1973, § 1–1510. Nevertheless, we hold, as a matter of law, that the notice was inadequate under § 3.323. The Board's contrary ruling is "plainly erroneous." *Bernstein v. District of Columbia*, D.C.App., 376 A.2d 816 (1977). As quoted above, § 3.323 states that the Board's legal responsibility extends to the notification by mail of each *occupant* of property situated near the subject property. The Board mailed a single letter to the address of each property, regardless of the number of persons or businesses that occupied the property. While this procedure may be adequate to notify one occupant, it falls short of notifying, for example, the occupants of an apartment house, as in the case here. It cannot reasonably be presumed that the persons (occupants) sought to be reached have in fact been notified. *Dupont Circle Citizens Association v. District of Columbia BZA, supra* at 612.

The intervenor states that the regulatory scheme does not anticipate the notification of the residents of properties within 200 feet of the property under consideration. It reasons that "section 3.322 provides for the mailing of notice to abutting property *owners*," but that the section fails to provide for notice to *residents* of the abutting property. A fortiori, it concludes, tenants occupying buildings at a greater distance from the subject property need not be notified. Such an interpretation of the regulations would be reasonable if § 3.323 did not exist, but is hardly convincing in view of its plain terms: "mailing the notice to the occupants of property situated within two hundred . . . feet." The intervenor's attempt at amending the regulations, by way of its brief, demonstrates the logical poverty of its position. For example, the intervenor states that "the Board mailed

notice . . . to all *properties* within 200 feet of the subject property (Rule 3.323)." (Emphasis added.) Were the regulation *intended* to read thus, it *would* have been simple enough to have so worded it.

Both the Board and the intervenor rely upon the possibility that the four notices mailed to the four apartment houses may have been received by the managers, who may have posted them for the buildings' occupants. The Board indicates that we "must *presume* that the resident managers of the affected buildings did not post the notices received from respondent, in order to find any failure of notice." Respondent's Brief at 6 (emphasis in original). No showing is attempted by the Board, however, to indicate that the apartments' managers were residents of the buildings, that a letter addressed to "occupant" would be more likely delivered to a resident manager than to another occupant of the building, or that, if a letter did reach a resident manager, the manager would be more likely to post the letter in the lobby than to send it to the owner, to file it or to discard it. The sole reference to this issue in the record, quoted below, indicates that the posting would be unlikely.

The best view of the issue may be gained from extracts of the hearing at which the Board's vote was taken. At page 56 of the record, Chairman Harps expresses his concern over the amount of time the Board has spent in addressing the question in past cases:

> [W]e've gone over this at every meeting so far. Now what procedure have you followed?
>
> MR. HATTON [Secretary to the Board]: Nothing special to require the management [of the multi-occupant buildings] to do anything. Obviously we can't contact the individual residents, and we have not come up with a means of requiring the management to post our notices that we mail out to occupants within 200 feet.
>
> *  *  *  *  *  *
>
> CHAIRMAN HARPS: I see. Now, we've discussed it in Executive Commit-

tee meetings, or in the open public meeting, whatever it was. As I recall there was a time when we sent a notice out to occupant, and some of the people in apartment buildings got it and some people didn't get it, because the postman gets a letter to occupant and he might put it in somebody's box and he might not. . . .

> Now, what is the recommendation of the staff with regard to this? We can't meet this every month and sit here and spend a half hour talking about it.
>
> MR. McCANTS [Member of the Board]: Well, Mr. Chairman, it seems to me that until the Board [has] promulgated new regulations to take care of this, then we have to abide by whatever rules that we have presently existing.
>
> CHAIRMAN HARPS: Well, the only rule is to notify every occupant within 200 feet, and notifying every occupant means by mail.
>
> MR. McCANTS: That's right.
>
> *  *  *  *  *  *
>
> MR. HATTON: Let me say this. There is a requirement at the present time that the applicant submit a list of the . . . premises within 200 feet.
>
> Now, once in a while, occasionally but rarely, there is some indication that the properties or premises are apartment structures. Most of the time there is no indication to us as to what kind of a building sits on that property.
>
> What I'm thinking about sitting here listening to the discussion is, that we need to amend our requirements that would make it incumbent on the applicant to indicate with this listing which properties might be apartment buildings. If they would do that, then we could mail a notice, not to occupant, but to the manager of the building, and that notice would then instruct the management to post the hearing notice somewhere in the lobby. But we have to rely on somebody else to do some of it.
>
> MR. McCANTS: Yes, but we can't instruct some management company to—

CHAIRMAN HARPS: We could instruct them, but it wouldn't be effective. Following this discussion, Mr. McCants stated that the applicant should not be penalized as a result of the inadequacy of the Board's regulations and practices. He states, "I don't see where the applicant has not complied with the regulations, and what I see are inadequate regulations. But whatever the inadequacies, it's not the applicant's making, it lies somewhere else. And for that reason I would move that we move forward with this case and hear it." The Chairman then called for a second and, without further discussion, the motion passed.

From the above discussion, several important points may be gleaned. First, the Board was well aware of the issue and had addressed it on many occasions in the past. The principal remonstrant at the hearing stated that the Board was advised on the subject by the Corporation Counsel in July of 1975. Second, the members felt that the procedures of sending one letter, addressed to "occupant," to each address, was inadequate under the regulations and that the regulations and procedures should be changed. Third, the Board felt that its faults should not be visited upon the head of the applicant, and therefore, the hearing on the merits of the application should go forward without readvertisement. It is unclear whether the vote was based wholly or only partially upon the desire not to disadvantage the applicant.

■ As to the Board's awareness of the issue and the issue's history, the regulations remain unamended. However, by a December 12, 1977 document, the Board directed applicants to indicate which of the buildings, within 200 feet, are multi-tenant facilities and to indicate, for those buildings, the name and address of a building manager or "other responsible person who can post a copy of the notice in the lobby or some other conspicuous place in the building." We question whether the notice in this case *would* have been adequate, even had this procedure been followed. If Mr. McCants and Chairman Harps, as quoted above, were correct in their statements that the Board may not compel the posting in the lobby, it is difficult to understand how the Board would reasonably anticipate that the occupants would be notified. Unless the building manager were to take a vigorous stand against the applicant, it would appear less likely that they would notify their tenants than that the Kopffs would notify the persons appearing on their petition. *See Kopff v. District of Columbia ABC Board, supra* at 1383. "We cannot endorse the Board's attempt to shift to private persons its responsibility for the notification." *Id.* At the same time, we find no error in the Board's policy, in meeting its responsibilities, of soliciting aid from the applicant, such as requiring the applicant to submit a list of names and addresses of abutting property owners. We also do not fault the Board's policy of allowing the applicant to bear a portion of the administrative and fiscal burden of processing an application, as exemplified in 22 DCRR § 3.33, which requires the applicant to post notice, file a photograph of each posted notice and file an affidavit certifying compliance with the rule. A similar regulation, imposing on the applicant the responsibility for mailing notices or for preparing notices for mailing, would seem reasonable should the Board decide to promulgate such a rule.

■ Concerning the second point, the adequacy of the notice, we hold that the requisite notice was not given. In a portion of the record quoted above, one member of the Board expressed the hopelessness of attempting to notify each resident of a multi-tenant building. It was upon essentially the same thesis that the ABC Board unsuccessfully requested this court to reconsider its decision in *Kopff*, which interpreted the D.C.Code as requiring the Board to notify persons, whose names appeared upon petitions, of an impending hearing. As has the ABC Board, the BZA has imposed the responsibility upon itself and, as is discussed above, may shift it to the applicant. Furthermore, on remand, the Board may require the applicant to furnish the Board with the suite, room or apartment number

of the multi-tenant facilities within 200 feet. As "occupant" is not limited to one who employs property as a dwelling, all the occupants of the non-residential property must be notified under the regulation. While the Board is free to amend its regulations, it is not free to disregard their plain wording. *E. g., Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). An agency should interpret its regulations forthrightly rather than in a strained or contorted manner.

■ The third point regards the basis for the Board's vote. As the quotation from the record indicates, the Board voted to hear the case on the basis that the *applicant* had complied with the Board's regulations. The issue of whether the Board had complied with the regulations was never expressly considered, despite it being, at that point, the only issue raised by the opposition. Viewing the vote in the light most favorable to the Board it may be assumed that the Board implicitly ruled that the mailings accorded with the regulation, and, upon that basis, the Board decided to hear the merits of the case. If this is the case, then the Board impermissibly employed an irrelevant criterion: whether the applicant, having acted in accordance with the Board's instructions, should be penalized for the Board's inadequate actions. The criterion has no bearing upon whether the Board gave adequate notice according to its regulations. The Board's mistake is accentuated because the irrelevant factor was the apparent controlling reason for the motion's passing.

■ Having evaluated the other allegations of deficiencies in mailed and posted notices, the possibility of actual notice to the occupants and the possibility that the interests of unnotified occupants have been represented by the participating protestants, we hold that the omission here was not harmless error. *See* D.C.Code 1973, § 1–1510; *Kopff v. District of Columbia ABC Board, supra* at 1383. Not only could unnotified occupants have raised new issues, but also they could have provided more facts—facts which perhaps were unknown to participating remonstrants—to sway the Board in its determination. In addition, an agency may be swayed by the actual number of persons objecting to an application. *Id.* at 1383 n.21.

### III. Other Issues Raised by Intervenor.

■ On the issue of waiver raised by the intervenor, we hold that the Board did not waive § 3.323, and therefore we do not meet the issue of whether the waiver was "for good cause shown" and "not otherwise prohibited." Not even an oblique reference is made in the record to the waiver provision, 22 DCRR § 1.3, or the Board's desire to employ it as a basis for decision. A claim of waiver cannot be invoked as post facto whitewash.

In a supplemental memorandum, the intervenor has urged the court to hold this decision in abeyance pending the resolution of a petition for review that was filed in this court on November 6, 1978 (No. 14090). That petition is similar to the petition before us here in that it involves the identical parties and the same property, in consolidation with some adjoining property. In part, the later petition arises from the notice given by the Board. In attempting to fulfill § 3.323, the Board mailed notices to the owners of the multi-occupant structures within the 200-foot perimeter, relegating to them the Board's responsibility to notify the occupants of the structures situated on their land. While these facts are not before us here, we commend this opinion to the Board and the intervenor for a close reading in deciding whether to oppose the first ground, cited in the petition for review, for remand of that case for readvertisement and rehearing.

Due to our holding and remand, we need not reach the other issues raised by the petitioner. The decision of the Board is reversed for failure to provide proper notice.

*Reversed and remanded.*