Joseph L. DeLEVAY, Petitioner,

v.

**DISTRICT OF COLUMBIA RENTAL ACCOMMODATIONS COMMISSION, Respondent.**

No. 13960.

District of Columbia Court of Appeals.

Argued May 31, 1979.

Decided Jan. 24, 1980.

Joseph L. DeLevay, pro se.

Jeffry A. Kappstatter, Asst. Corp. Counsel, Washington, D.C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D.C., at the time the brief was filed, John C. Salyer, III, and Frederick F. Stiehl, Asst. Corp. Counsels, Washington, D.C., were on brief, for respondent.

Before GALLAGHER, NEBEKER and FERREN, Associate Judges.

FERREN, Associate Judge:

Petitioner DeLevay, a tenant, challenges a decision of the Rental Accommodations Commission (Commission) authorizing an overall rent increase in his apartment building. We conclude that, because DeLevay did not challenge the owner's petition for a rent increase before the Rental Accommodations Office (RAO), he is not an "aggrieved party" having a right to appeal the RAO decision to the Commission. D.C. Code 1978 Supp., § 45–1652(g). We therefore hold that it was improper for the Commission to review DeLevay's allegations and, accordingly, that his petition to this court must be dismissed for lack of jurisdiction. *See* D.C. Code 1979 Supp., § 45–1697.

I.

On June 13, 1977, F. G. H. Associates, the owner of apartments at 2200 19th Street, N.W., filed a hardship petition for a rent increase with the RAO. Upon receiving notice of the proposed increase, several tenants requested a hearing. *See* Regulations of the District of Columbia Rental Accommodations Commission (RAC Regs.) § 2.31.[1] These tenants were then notified of the date, time, and place of the hearing. *See* RAC Regs. §§ 2.31, 3.11. Subsequently, the tenants formed an organization to represent them, the Shawmut Tenants' Association (STA). Petitioner DeLevay, however, neither sought a hearing on the proposed rent increase nor joined the STA.

The RAO conducted the hearing in August 1977.[2] The hearing examiner issued a

1. RAC Regs. § 2.31 provides:
   Upon receipt of a rent adjustment petition, the Administrator shall notify the appropriate affected parties by certified mail, or other form of service assuring delivery, of the receipt of such petition and of the right of either party to make a written request for a hearing within fifteen days after receipt of the Administrator's notice. If a hearing is timely requested by either party, notice of its time, date and place shall be furnished by the Administrator to the parties by certified mail, or other form of service assuring delivery, at least fifteen days before the commencement of such hearing. The notice of hearing shall inform each party of the right to have legal counsel or other representation at the hearing.

2. An initial hearing took place on July 19, 1977. STA introduced evidence that the landlord had decreased services in the building over previous years and that numerous housing code violations existed. The examiner, therefore, con-

written decision on December 1, 1977. He concluded that in order to obtain the 8 per cent rate of return permitted under the statute, the owner was entitled to a rent increase of 13.57 per cent above the current maximum rent ceiling. He also found, however, that the building had been cited for a number of housing code violations and that the landlord had decreased services previously furnished to the tenants by $6,765. Accordingly, the examiner conditioned the rent increase on the abatement of the housing code violations and submission to RAO of a plan for payment of refunds arising from decreased services. The examiner also ordered that the rent increase could not be effective without 30 days' notice of the increase to each tenant.[3] RAC Regs. § 2.40. Based on this order, the landlord immediately gave the tenants written notice of the approved rent increase.

Both the landlord and the STA appealed the RAO decision to the Commission, which heard the matter on January 18, 1978. The Commission remanded the case to the RAO for three purposes: (1) for the complaining tenants to review the documentation filed by the landlord in support of the hardship petition, (2) for an RAO finding as to whether housing code violations reported in June 1977 had been abated, and (3) for RAO's reassessment of the value of decreased services. In order to make it possible for the owner to implement the rent increase on February 1, 1978, the Commission ordered the RAO to make findings only on the availability of the documents and abatement of the housing code violations; a

revised ruling on decreased services was to await the Commission's written decision.

Pursuant to the remand order, the hearing examiner made the documents underlying the rent increase available to the STA.[4] He gave the STA until January 27 to make objections to the documents. They made none. The examiner also received a statement from the Office of the Housing Inspector confirming that all housing code violations had been abated. He thereupon concluded that this particular condition for the rent increase had been satisfied.[5] Accordingly, on January 31, 1978, the examiner issued a decision on behalf of the RAO, ruling that the owner's rent increase (provided for in the December 1, 1977 order) could become effective as of February 1, 1978.

After receiving notice that his rent would be increased pursuant to the January 31 decision, DeLevay entered this proceeding for the first time by filing a notice of appeal to the Commission on February 10, 1978. One member of the Commission questioned DeLevay's right to bring an appeal, since he had not participated in any of the proceedings that led to the January 31 decision. After considerable discussion, however, the Commission considered DeLevay's appeal on the merits pursuant to RAC Regs. § 5.30, *as amended by* 24 D.C.Reg. 3589 (Nov. 4, 1977), which provides in part: "*Any person adversely affected* by a decision of the Administrator may obtain review of the decision by filing a timely notice of appeal with the Commission" (emphasis added).[6] The Commission agreed

---

tinued the hearing and directed the STA to file a petition for decreased services pursuant to RAC Regs. §§ 2.30(b)(1), (4). *See* D.C. Code 1978 Supp., §§ 45–1644(e)(1), –1646(2). The RAO received STA's petition on July 29, 1977, and consolidated it with the landlord's petition for increased rent. RAC Regs. § 2.33.

3. The hearing examiner also ordered management to replace the lobby furniture and to provide sand containers for disposal of smoking materials.

4. DeLevay, who had not requested a hearing or been a party to the appeal, was not notified of the availability of the documents. *See* RAC Regs. § 1.34.

5. He also determined that the landlord had provided a sufficient plan for payment of refunds, whatever the final amounts turned out to be.

6. RAC Regs. § 5.30, *as amended*, provides in full:

   *Any person adversely affected* by a decision of the Administrator may obtain review of the decision by filing a timely notice of appeal with the Commission. The notice shall set forth in full the reasons for the appeal.

that in amending this regulation it had liberally interpreted the Rental Accommodations Act, D.C.Code 1978 Supp., § 45–1652(g) (authorizing an appeal by the "aggrieved party"), in order to permit an appeal to the Commission by anyone who receives a rent increase, even though he or she may not have participated in an earlier RAO proceeding. *See* Record at 91–95.[7]

On July 19, 1978, almost six months after the rent increase, the Commission issued its decision on the appeals filed by STA and the owner, affirming (for the most part) the December 1, 1977, and January 31, 1978, RAO decisions. Consistent with its January 18 remand order, however, the Commission again remanded the case to the RAO for a new finding on the value of decreased services.[8]

On September 6, 1978, the Commission published an opinion and order denying DeLevay's appeal on the ground that it failed "to state a valid basis for appeal." Specifically, the Commission explained that the January 31 RAO decision which DeLevay had appealed was of limited scope; it was intended only to assure the complaining

tenants an opportunity to review the documents supporting the rent increase and to permit the examiner to determine whether the landlord had abated the code violations. Observing that the examiner had resolved both of these problems satisfactorily, the Commission concluded that DeLevay had failed to state a valid basis for appeal.[9] On October 3, 1978, DeLevay filed a timely petition in this court for review of the Commission's order. *See* D.C. Code 1979 Supp., § 45–1697.[10]

## II.

DeLevay alleges nine errors in the proceedings to date, the first five of which he cites for the first time in this court. He claims that (1) he did not receive notice of the landlord's petition for a rent increase, *see* D.C. Code 1978 Supp., § 45–1652(b); RAC Regs. § 2.31; (2) the landlord failed to meet the registration and licensing requirements for a rent increase, *see* D.C. Code 1978 Supp., § 45–1644(e)(3), (4); (3) the RAO's decisions were improperly signed by the hearing examiner in the name of the administrator; (4) the landlord's implementation of the rent increase on February 1,

---

These reasons must relate to the evidence that was before the Administrator and the application of the law to the case. A general claim that the order is not in accordance with the law will not be sufficient. [Emphasis added.]

7. D.C. Code 1978 Supp., § 45–1652(g) provides in part:

(g) . . . An appeal from any decision of the Rent Administrator may be taken by *the aggrieved party* to the Commission within ten days after the decision of the Rent Administrator, or the Commission may initiate a review of a decision of the Rent Administrator on its own initiative. . . . [Emphasis added.]

Prior to the 1977 amendment, RAC Regs. § 5.30 had followed § 45–1652(g) more closely by limiting the right of appeal to the Commission to a "party of record":

Review by the Commission of the Administrator's findings of fact, conclusions of law and order may be obtained by *any party of record* by the timely filing of a notice of appeal as provided in Section 5.20. A copy of the notice shall be served upon each of the parties of record by the Administrator together with notice of the time, date and place for hearing of the appeal.

The notice shall set forth in full the reasons for the appeal. Where the appeal is based in whole or in part upon the claim that the order is not in accordance with law, a general statement to that effect will be considered insufficient if unaccompanied by specific reasons, in which case the notice of appeal will be deemed defective. [Emphasis added.]

8. The Commission previously had denied a request by the STA for clarification of the January 18 remand order.

9. DeLevay also alleged two other improprieties: that he had been denied notice of previous hearings, and that the parties had been denied an audit of the landlord's records. The Commission concluded that neither contention had merit.

10. Section 45–1697 is a reenactment of D.C. Code 1978 Supp., § 45–1673(a), and became effective on March 16, 1978 as part of the Rental Housing Act of 1977, which replaced the Rental Accommodations Act of 1975. Since DeLevay filed his appeal with the Commission on February 10, 1978, the Rental Accommodations Act applies to this case.

1978, 24 hours after the RAO's January 31 decision, violated the 30-day notice requirement, *see* D.C. Code 1978 Supp., § 45–1652(h); and (5) the RAO erred in concluding that the landlord had developed a satisfactory plan for compensating tenants for the value of decreased services.

DeLevay also reasserts the four errors alleged before (and rejected by) the Commission; specifically, that (6) as a tenant, he was improperly denied notice of scheduled hearings in the STA proceeding, prior to the time he entered the case by filing a notice of appeal; (7) the hearing examiner erred in concluding that the landlord's documents supporting the hardship petition had been made available to the parties; (8) the RAO improperly concluded that the landlord had abated the Code violations in the building, since the parties had not been given an opportunity to rebut the housing inspector's report before the RAO relied on it, *see Carey v. District Unemployment Compensation Board*, D.C.App., 304 A.2d 18, 20 (1973); D.C. Code 1978 Supp., § 1–1509(b); and (9) the parties had not been given an opportunity to conduct the audit of the landlord's records permitted by RAC Regs. § 2.22.

■ A.   We begin by considering the alleged errors in the RAO proceeding which DeLevay raises for the first time in this court.   Chief among these is DeLevay's assertion that he did not receive notice of the landlord's petition for a rent increase—an argument purporting to provide an excuse for his failure to intervene until he received notice of the increase itself.   DeLevay, however, does not contend that he lacked an opportunity to raise the notice issue (or any of the others) before the Commission.[11]   It follows that he cannot properly raise these issues for the first time in this court, since the District of Columbia Administrative Procedure Act, D.C. Code 1978 Supp., § 1–1510, directs this court to "hear and determine all appeals upon. the exclusive record for decision before the   .   .   . agency."   We have refused to permit issues not raised at the administrative level to form the basis for overturning an administrative decision.   *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C. App., 320 A.2d 282, 287 (1974); *John D. Neumann Properties, Inc. v. District of Columbia Board of Appeal and Review*, D.C. App., 268 A.2d 605, 606 (1970).[12]   We thus feel constrained to evaluate DeLevay's petition on the premise that there was no irregularity in the notice procedure.[13]

B.   The threshold question in considering DeLevay's remaining claims is the one initially considered by the Commission: whether petitioner is an "aggrieved party," D.C. Code 1978 Supp., § 45–1652(g), authorized to appeal the RAO decision of January 31, 1978 to the Commission.   As indicated in Part I *supra*, the Commission has provided by regulation, interpreting the "aggrieved party" requirement, that "[a]ny person adversely affected by a decision of the Administrator may obtain review of the decision by filing a timely notice of appeal with the Commission."   RAC Regs. § 5.30, *as amended*; *see* note 6 *supra*.   In this proceeding, the Commission determined that, despite DeLevay's failure to join the proceeding during its initial phase before the RAO, he was entitled to appeal to the Commission as a "person adversely affected" by a rent increase.   Thus, we must consider whether

11. Before the Commission, DeLevay asserted only that he was "never served any date of hearing"; he did not claim he had failed to receive notice of the petition that gave rise to the proceeding.

12. In contrast, some jurisdictions, by statute or judicial interpretation, allow issues not considered at the administrative level to be raised on appeal in extraordinary circumstances. *See* 2 F. Cooper, State Administrative Law 600–02 (1965); K. Davis, Administrative Law Treatise, § 20.06 at 96–97 (1958).   Even under such a rule, however, DeLevay could not raise the notice issue here, for the record does not suggest any irregularity in the original notice procedure.

13. *Compare Ammerman v. D. C. Rental Accommodations Comm'n*, D.C.App., 375 A.2d 1060 (1972) (reversing RAC imposed fine for excessive rent charge where owner had not been named a party in, and concededly had not been given notice of, the Commission proceedings).

a tenant, who has declined to challenge a proposed rent increase at the RAO level while other tenants did so, can later attack the RAO decision by appealing as an "aggrieved party" to the Commission and, ultimately, by petitioning this court.[14]

■ We have held on many occasions that an agency's interpretation of the statute and regulations it administers will be sustained unless shown to be unreasonable or in contravention of the language or legislative history of the statute. *See 1880 Columbia Road, N.W., Tenants' Association v. District of Columbia Rental Accommodations Commission,* D.C.App., 400 A.2d 333, 337 (1979); *District of Columbia v. Catholic University of America,* D.C.App., 397 A.2d 915, 919 (1979); *Tenants of 3039 Q Street, N.W. v. District of Columbia Rental Accommodations Commission,* D.C.App., 391 A.2d 785, 787 (1978). Thus, the Commission's regulation § 5.30, *as amended,* and its consequent authorization of DeLevay's appeal are presumptively valid. Nevertheless, we conclude that the Commission's broad interpretation of the phrase "aggrieved party" in § 45–1652(g) to mean "any person adversely affected" contravenes the language of the statute. One who fails to assert legal rights but later decides to appeal a decision he could have challenged—and arguably prevented—cannot reasonably be called "aggrieved," let alone a "party." It follows that RAC Regs. § 5.30, *as amended,*

is unlawful because it does not limit appeal rights to those who were among the parties before the RAO.[15] *Compare* § 5.30 prior to amendment, quoted in note 7 *supra.*

■ There are sound reasons supporting our interpretation. As the history of this case in Part I *supra* demonstrates, the regulatory scheme at issue is complex and can be burdensome, as well as time-consuming, to everyone concerned. In a proceeding, such as this one, involving a rent increase for all the apartment units in a building, it is essential to orderly resolution that all the tenants who are interested in challenging the increase join together at the outset, as either co-complainants or timely intervenors (facilitated by RAC Regs. § 2.33 governing consolidation of petitions). Such action is essential not only as a matter of fairness to the landlord and efficiency for the agency, but also as the only practical and equitable way of sorting out differences among tenants in responding to the issues—and options—that may unfold. Accordingly, as this case demonstrates, once the question of a general rent increase was resolved by the STA litigation, after one appeal to the Commission, it was manifestly unreasonable for the Commission to permit another tenant—petitioner DeLevay—to reopen settled matters (*e. g.,* code violations), as well as to assert new matters (*e. g.,* the right to audit the landlord's records), in a second appeal to the Commission.[16]

---

14. We cannot analyze this case simply as one in which a tenant failed to make a timely challenge to a landlord's hardship petition before the RAO, *see* note 1 *supra,* without regard to whether other tenants did so. The pendency of an RAO proceeding brought by other tenants at least suggests the possibility that DeLevay's later appeal to the Commission under RAC Regs. § 5.30, *as amended,* as a "person adversely affected" is akin to a timely intervention. As the opinion makes clear, however, such pendency of an RAO proceeding does not preserve DeLevay's rights.

15. This analysis, which pertains solely to relief within an administrative agency, relies on policies similar to those underlying the exhaustion of administrative remedies doctrine. *Compare Red River Broadcasting Co. Inc. v. FCC,* 69 App.D.C. 1, 5–7, 98 F.2d 282, 286–88, *cert. denied,* 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400

(1938). Our invalidation of § 5.30, *as amended,* is not intended to foreclose the Commission from creating rights and procedures applicable to a tenant who seeks administrative relief from an RAO-approved rent increase on the ground that he or she did not receive notice of the proposed increase.

16. In concluding, on the merits, that DeLevay "fails to state a valid basis for appeal," the Commission held, as to one alleged error, that DeLevay was not entitled to notice of RAO hearings because he had not been a "party" to the RAO proceeding; *i. e.,* the "parties" entitled to notice under RAC Regs. § 2.31 were "only . . . tenants who had requested a hearing." As to another alleged error, the Commission stated that the "issue of housing code violations has been concluded"; thus, again, the Commission favored the view that only tenants who had timely raised a question

The Commission's consideration of DeLevay's appeal was unreasonable not only because of the obvious virtues of finality over piecemeal litigation, but also because of the many practical difficulties in deciding how to implement any relief DeLevay might have obtained on appeal. For example, if he had established reversible error in the RAO examiner's failure (after remand) to permit STA parties to question the housing inspector's report, would DeLevay have become a party to the STA proceeding for purposes of challenging that report after remand, or would he merely have established a second opportunity for the original parties to refute that report? In either event, what if the original parties did not wish to pursue further the code violations issue; would DeLevay have any remedy if the alleged violations pertained only to STA-members' units, or only to the units of non-party tenants? While these questions may not pose insurmountable problems, they potentially make the litigation more complex than it ought to be, in fairness, when everyone concerned presumably was on notice of the proposed rent increase and could have challenged it in one orderly and expeditious proceeding.[17]

### III.

■ In summary, we hold that issues not raised by a tenant before the Commission may not be considered for the first time by this court. We further hold, as to issues considered by the Commission, that a tenant is not an "aggrieved party," D.C. Code 1978 Supp., § 45–1642(g)—and thus is not entitled to appeal an RAO-approved increase to the Commission—when that tenant has failed to join others in the challenge to the increase before the RAO. Petitioner DeLevay, accordingly, had no right to appeal his rent increase to the Commission. It follows that this court lacks jurisdiction

were entitled to participate in the administrative proceeding. We therefore find it anomalous that the Commission considered DeLevay's appeal on the merits.

**17.** Had DeLevay asserted before the Commission that, as a tenant, he did not receive his

to consider his petition. *See* D.C. Code 1979 Supp., § 45–1697.

*Petition dismissed.*

statutory notice, *see* D.C. Code 1978 Supp., § 45–1652(b); RAC Regs. § 2.31—and thereby preserved that issue for review—the result here might be different. *See DuPont Circle Citizens Ass'n v. D.C. Bd. of Zoning Adj.,* D.C.App., 403 A.2d 314 (1979).