Mishey L. PROCTOR, et al.,
Petitioners,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

I. Ornstein, et al., Intervenors.

No. 83–723.

District of Columbia Court of Appeals.

Argued June 19, 1984.

Decided Nov. 14, 1984.

Richard C. Eisen, Washington, D.C., with whom William P. Bodwitch, Washington, D.C., was on the brief, for petitioners.

William J. Earl, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

William E. Rollow, Washington, D.C., for intervenors. Jo V. Morgan, Jr. and John J. Brennan, III, Washington, D.C., also entered appearances for intervenors.

Before PRYOR, Chief Judge, FERREN, Associate Judge, and GALLAGHER, Associate Judge, Retired.

FERREN, Associate Judge:

We consider a petition for review of an order of the Rental Housing Commission (RHC) issued after this court's remand of the proceedings in *Scholtz Partnership v. District of Columbia Rental Accommodations Commission,* 427 A.2d 905 (D.C. 1981). We conclude that the RHC erred both (1) in declining to consider a compromise settlement proposed by the landlord and the Tenants Association and (2) in interpreting this court's remand order to preclude recalculation of the originally-approved "hardship" rent increase. We reverse and remand, once again, for further proceedings.

I.

On December 19, 1977, the landlord-intervenor filed a petition with the Rental Accommodations Office for a hardship rent increase for the Parkway Plaza apartments under the Rental Accommodations Act of 1975, D.C.Law 1–33, D.C.Code § 45–1649 (Supp. V 1978). The statute authorized such an increase if rental income did not yield an 8% rate of return, and entitled the landlord to a ruling within 60 days of filing (*i.e.,* by February 18, 1978). *Id.* § 45–1652(a). The hearing examiner, however, did not issue a decision until June 9, 1978, when she approved, on behalf of the Rent Administrator, a hardship increase of 6.7%. The landlord implemented that increase on August 1, 1978. In the meantime, however, on July 1, 1978, the landlord had implemented an automatic increase of 10% under the recently adopted Rental Housing Act of 1977, D.C.Law 2–54, D.C.Code § 45–1687 (Supp. VII 1980), which had become effective—and superseded the 1975 Act—on March 16, 1978. Thus, the landlord implemented, first, a 10% automatic

increase under the 1977 Act, followed by the 6.7% hardship increase eventually allowed pursuant to his earlier, timely petition under the 1975 Act.

Lorine McKinney, acting as an individual tenant, and petitioner Mishey Proctor, acting on behalf of the Tenants Association, filed separate notices of appeal with the Rental Accommodations Commission (RAC) challenging the increases. After hearings on December 19, 1978 and January 2, 1979, the RAC evaluated the interplay of the 1975 and 1977 Acts and determined that the landlord was entitled to only one of the two increases. The landlord petitioned for review by this court. We reversed and remanded the case to the RAC, ruling that the landlord had a vested right to a decision under the 1975 Act by February 18, 1978, and thus was entitled, in proper sequence, both to a hardship increase under the 1975 Act, effective April 1, 1978 (after 30 days notice to the tenants), and to an automatic increase under the 1977 Act, effective October 1, 1978, 180 days after the previous increase, *id.* § 45–1689(h). *Scholtz Partnership, supra,* 427 A.2d at 917 & n. 9.

On February 18, 1982, the RHC (RAC's successor agency) heard the case on remand.[1] In August 1982, after lengthy negotiations between attorneys representing the Tenants Association and the landlord, the parties jointly submitted a proposed order giving the landlord a 5.6% hardship increase followed by the 10% automatic increase. Both parties later wrote to the RHC urging adoption of the proposed order. On December 1, 1982, the RHC held a "post-settlement hearing" at which both the landlord and the Tenants Association again urged the Commission to issue an order incorporating their settlement. They stressed that an order was necessary because the Tenants Association could not legally bind all the tenants to a settlement. Tenant McKinney, however, opposed the proposed order, contending that it was too favorable to the landlord. On June 14,

1983, the RHC issued its decision, declining to adopt the proposed settlement and granting the landlord the originally-permitted 6.7% hardship increase, followed by the 10% automatic increase.

II.

Petitioners contend, first, that the RHC erred in declining either to adopt the proposed order for a 5.6% hardship increase or to give reasons for its rejection. The landlord replies that no proposed order was properly before the Commission at the time of decision because the "settlement discussions were off the record" and, in any event, the landlord had premised the settlement on two unmet conditions: that "the settlement be agreeable to and binding upon all the tenants," and that "there be an immediate cessation of the litigation with its attendant expense."

The landlord's positions are not well taken. In the first place, the record contains a draft order prepared by the landlord, as well as letters from both parties, confirming that the draft incorporated the settlement. Whatever the nature of the settlement discussions, the final resolution was incorporated into these documents of record.

More specifically, the landlord submitted the draft order to the RHC on August 3, 1982. There was no express condition that the landlord's willingness to settle was contingent upon agreement by all the tenants. Nor did the landlord's subsequent documentation of record refer to such a condition. On November 3, 1982, the landlord wrote two letters to the RHC. One discussed minor adjustments to the proposed order submitted in August and set a date for mailing refund checks to the tenants. The other letter, referring to the settlement, stressed that the "problem ... is the inability of the Tenants Association to bind legally all of the tenants. Accordingly, the only way this case can be resolved finally is by a Commission decision ... embodying

1. The RAC reheard the case on May 12, 1981, but never issued a decision.

this salient point of the settlement." This statement obviously is at odds with the landlord's contention that the settlement was dependent on unanimous tenant consent. To the contrary, the landlord recognized that only an RHC decision could bind all the tenants.

A month later, at the December 1, 1982 post-settlement hearing, the landlord adhered to the position that the RHC should issue an order embodying the terms of the settlement agreement. Again, there was no reference to a condition that all the tenants must agree before the landlord would stand behind the settlement. The landlord had not changed that position as of June 14, 1983, when the RHC issued its final decision and order. Three days later on June 17, 1983, the landlord did withdraw its offer of settlement—too late to argue that point here.[2]

■ The landlord's next contention, that the compromise settlement had been conditioned on "an immediate cessation of the litigation," also fails. Nowhere does that alleged condition appear of record. Nor is it implied by a settlement with petitioners on behalf of the Tenants Association. Although petitioners presumably would have been bound to end their litigation if the RHC had adopted the proposal to which they subscribed, there is no reason why other tenants, such as Ms. McKinney, would have been bound not to petition for review of an order incorporating a compromise settlement they had opposed. In sum, absent record evidence that the landlord's willingness to settle was contingent on 100% agreement by the tenants, we cannot agree that an end to litigation was an implied, let alone express, condition of the landlord's compromise settlement with the Tenants Association.

We turn, therefore, to the question whether the RHC was obliged to consider the proposed order. In its June 14, 1983 opinion, the RHC stated that the settlement discussions were "not germane to the disposition of this case." Apparently, the RHC believed the proposed order was irrelevant because of its perception that this court, in *Scholtz Partnership, supra,* had held that the 6.7% hardship increase was binding. That perception was incorrect; we left the RHC free to recalculate the hardship increase. *See infra* Part III. Accordingly, we must determine whether the RHC, in addressing the hardship increase, had an obligation to evaluate, first, the merits of the compromise settlement worked out after the remand, even though that proposal did not have the support of all the tenants.

■ Settlements of administrative proceedings are common, as reflected by D.C. Code § 1–1509(a) (Supp.1984) which provides in part:

> Unless otherwise required by law, other than this subchapter, any contested case may be disposed of by stipulation, agreed settlement, consent order, or default.

*See id.* § 1502(8) (1981) (defining "contested case"). The Supreme Court has held that federal agencies governed by analogous statutes and regulations providing for "offers of settlement" are obliged to consider settlement agreements proposed by one or more of the immediate parties. *Mobil Oil Co. v. Federal Power Commission,* 417 U.S. 283, 312–14, 94 S.Ct. 2328, 2347–49, 41 L.Ed.2d 72 (1974).[3] Thus, even when

---

**2.** The landlord previously had withdrawn from settlement negotiations on June 21, 1982. The negotiations were revived, however, as the parties jointly submitted a proposed order less than two months later.

**3.** Under the federal Administrative Procedure Act, the provision analogous to D.C.Code § 1509(a) is 5 U.S.C. § 554(c)(1), which provides:

> (c) The agency shall give all interested parties opportunity for—
> (1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit....

The regulation specifically applying to the Federal Power Commission, and cited by the Supreme Court in *Mobil Oil Co., supra,* 417 U.S. at

consent to a proposed settlement is not unanimous, the agency must consider the proposal on its merits as a possible basis for the agency's order. *Id.; Consolidated Gas Supply Corp. v. Federal Energy Regulatory Commission,* 196 U.S.App.D.C. 57, 63–64, 606 F.2d 323, 329–30 (1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980).

We therefore confront two questions: (1) whether D.C.Code § 1–1509(a), which permits an agency to dispose of a contested case "by stipulation, agreed settlement, [or] consent order," obliges the agency— unless its enabling act provides otherwise—to consider an offer of settlement by fewer than all the immediate parties; and, if so, (2) whether § 1–1509(a) applies in conjunction with the Rental Accommodations Act of 1975.

■■■ We conclude that, although the language of § 1–1509(a) specifically authorizes only agreed settlements by all the parties, the rationale of that provision necessarily obliges an agency at least to consider on the merits a reasonable settlement proposed in good faith by fewer than all the parties, unless the statute governing the agency's responsibility clearly indicates otherwise. *See United States v. Public Service Commission,* 465 A.2d 829, 832 (D.C.1983); *see also Metropolitan Washington Board of Trade v. Public Service Commission,* 432 A.2d 343, 363 n. 40 (D.C. 1981). The policy favoring efforts for agreed settlements should not be abandoned simply because one or more parties to a dispute elect to stand on their legal rights instead of joining in a compromise. While an agency need not adopt a settlement that is not unanimously supported, considerations of fairness suggest that an agency at least should pay careful attention to a proposal by parties who earnestly wish to compromise their differences in a

way they believe will equitably account for the interest of everyone affected.

■■■ The question, then, becomes whether § 1–1509(a) applies in this case. The ratemaking process at issue in *Mobil Oil Co.* and in *Public Service Commission* obviously differs from rent control administration in that power commissions have much broader discretion than a rent control agency to fashion a typical, "just and reasonable" order. 15 U.S.C. §§ 717c(a), 717d(a) (1982); D.C.Code § 43–402 (1981) (formerly D.C.Code § 43–201a (1973)). The scope of the RHC's discretion under the 1975 Act is much narrower. It has a statutory duty to permit increases only in the amount allowed by a law embodying specific criteria.[4] While it is true, under the later Rental Housing Acts of 1977 and 1980, that binding increases are permitted if 70% of the tenants agree, D.C.Code § 45–1689(c) (Supp. VII 1980); D.C.Code § 45–1526 (1981) (D.C.Law 3–131, implemented by 14 DCMR § 3512), there is no comparable provision under the 1975 Act. As a general proposition, therefore, the RHC has a duty under the 1975 Act to determine the maximum allowable increase and, but for the applicability of D.C.Code § 1–1509(a) may not authorize increases in excess of that statutory maximum. It follows that, in the context of the 1975 Act, the concept of an order establishing a rent increase, based on a compromise settlement between a landlord and a tenants association, is somewhat anomalous; the RHC inescapably has the duty of resolving a dispute that, theoretically, has only one correct outcome.

In reality, however, we recognize that, in some circumstances, both parties' positions may be supported by persuasive arguments, especially when the result turns on a statutory ambiguity or on the analysis of a factually complex record. In such situations, it would be naive to say that there is only one correct, discernible outcome.

312 n. 46, 94 S.Ct. at 2348 n. 46, is 18 C.F.R. § 1.18(a).

**4.** Initially, the Rent Administrator determines the rent ceiling. D.C.Code § 45–1634 (Supp. V

1978). The RAC (now RHC) hears appeals of the Rent Administrator's decisions. D.C.Code § 45–1632(a)(2) (Supp. V 1978).

When it is also true that the process required for obtaining an authoritative RHC ruling will require an extraordinary outlay of resources and considerable delay in resolving the matter, it very well may be in the interests of landlord and tenants alike, as well as of the agency and the courts, for the active parties to arrive at a compromise agreement and for the RHC to approve that compromise by issuing an order incorporating its terms.[5]  We perceive no reason why D.C.Code § 1–1509(a) should not apply here.

We conclude, therefore, that even though the RHC's discretion to determine rent ceilings under the 1975 Act is sharply limited by the statutory formula, the RHC is obliged under § 1–1509(a), as amplified by the reasoning in *Mobil Oil Co., supra,* at least to consider compromise proposals which appear consistent with the Act and are acceptable to both the landlord and an active, representative group of the tenants.  Absent, however, the unanimous consent of the parties or a voluntary settlement procedure whereby a specified percentage of the tenants can bind all tenants to an agreement, *see* D.C.Code § 45–1526 (1981), 14 DCMR § 3512, the RHC need not adopt a compromise proposal.  *See Mobil Oil Co., supra,* 417 U.S. at 312–14, 94 S.Ct. at 2347–49.

■■■ In determining whether to adopt a proposed order embodying a compromise proposal for a rent ceiling under the 1975 Act, the RHC shall consider (1) the extent to which it enjoys support among the affected tenants, (2) its potential for finally resolving the dispute,[6] (3) the fairness of the proposal to all affected persons, (4) the saving of litigation costs to the parties, and (5) the difficulty of arriving at a prompt, final evaluation of the merits, given the complexity of the law and the delays inherent in the administrative and judicial processes.[7]  The RHC's decision, adopting or rejecting the compromise proposal, shall contain findings of fact and conclusions of law sufficient for this court's review.  *See* D.C.Code §§ 1–1509(e), –1510 (1981).

### III.

Petitioners assert, next, that if the RHC does not adopt the proposed order, it is required to recompute the amount of the hardship increase.  Our resolution of this contention turns, first, on the scope of this court's remand in *Scholtz Partnership, supra.*  We set forth the portion of the opinion that has caused the confusion and specifies the scope of the remand:

A hearing on the [hardship] petition was held on February 23, 1978, but the Rent Administrator's decision was not rendered until June 9, 1978, and pursuant to the thirty-day notice requirement, the 6.7% increase granted to the landlord was implemented on August 1, 1978. Certain of the tenants appealed and the Commission held, on March 27, 1979, that the matter should be remanded to the Rent Administrator for consideration under the 1977 Act with the landlord required to make an election between a hardship petition and the automatic increase under the new Act.

We hold that the statutory requirement of the 1975 Act, that the Rent

---

5.  We recognize that there may be situations in which the nature of the dispute is such that there are only two alternative outcomes supportable by principled arguments.  We nonetheless believe that a compromise proposal, offering a third alternative justified solely on the ground that it will end the dispute, may appropriately serve as the basis for an RHC order if all interested parties are allowed to present their views and if the difficult—and not clearly indicated—resolution of a particular legal or factual issue is of less importance than saving time and resources.

6.  Tenants who have had notice of, but not participated in, the agency proceedings would not have standing to challenge the result on appeal to this court.  *DeLevay v. D.C. Rental Accommodations Comm'n,* 411 A.2d 354, 358, 360 (D.C. 1980).  Those who have participated, of course, would have standing to appeal the RHC's rejection of their particular contentions.  *See id.*

7.  A conciliation procedure is now available in proceedings before the Rent Administrator under the 1980 Act.  14 DCMR §§ 3117.1–.12.

Administrator decide hardship petitions within sixty days, vested in the landlord who filed his petition in sufficient time to receive a decision before the expiration of the Act a right to such decision under the provisions of the 1975 Act. (footnote omitted). Consequently, we reverse the decision of the Commission in No. 79–435 and remand for further proceedings. A few factual observations, however, will help to provide a guide in those proceedings. We must note that the landlord was entitled to a decision by February 18, 1978, which would have enabled him to implement the 6.7% increase, after thirty-days notice to tenants, on April 1, 1978. Thereafter, under the provisions of the 1977 Rental Accommodations Act, he would be entitled to an automatic increase on October 1, 1978, 180 days after the previous increase. *See* D.C. Code § 45–1689(h) (1980 Supp.).[9]

[9] There are some difficulties in disposing of this case on remand. First, if the tenants who originally appealed this decision wish to pursue their appeal, that appeal must be heard by the Commission on its merits under the terms of the 1975 Act.... Second, the landlord is entitled to take this increase into his base rent for determination of the amount of the automatic increase he is entitled to under the 1977 Act. Since the decision ought to have been rendered before the effective date of the 1977 Act, the automatic increase taken by the landlord on July 1, 1978, is proper but three months early. Third, in computing the legally chargeable rent at the present time, the Rent Administrator must recompute the rent chargeable on October 1, 1978, by adjusting it upwards to account for the increase in the base rent on which the 10% automatic increase ought to have been determined.... Fourth, we should also note that the landlord improperly charged tenants 10% higher rent than he was entitled to for the

**8.** This is, in effect, the law of the case because this court did not limit the scope of the remand. *See generally* C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (1981). Except with respect to the particular facts of this case, we express no opinion on whether a tenant who intervenes, in support of the rent control agency in a landlord's petition for appellate court review, but declines to seek review of another issue on which the landlord prevailed before the agency, is entitled to raise that other issue before the agency, once again, after this court remands the landlord's petition for fur-

months of July, August, and September. However, his entitled 6.7% hardship increase was effected on August 1, 1978, four months after it could have gone into effect.

427 A.2d at 917 & n. 9.

The RHC understood this court to mandate the imposition of the originally-ordered 6.7% hardship increase:

In as much as we are bound by the rulings of the Court of Appeals, we conclude that the increases authorized are those stated by the Court. Thus, the landlord is granted a 6.7% increase effective April 1, 1978 and a 10% increase effective October 1, 1978.

■ We did not mean to convey that impression. *Scholtz Partnership* was a landlord's petition for review of the RAC's ruling that the landlord could take only one of the two rent increases, hardship (6.7%) or automatic (10%). The members of the Tenants Association (*i.e.*, the petitioners in the present case) intervened on behalf of the RAC, merely adopting the RAC's position. We held that the landlord could take both increases under the circumstances. The question whether the amount of the hardship increase (6.7%) had been properly calculated was not before the court; the tenant-intervenors, having prevailed on the principal issue before the RHC, did not seek review of the hardship increase itself. Rather than say that the tenants were bound to the 6.7% increase by their failure to challenge it as intervenors on appeal, this court specifically stated that the tenants, after remand, could pursue their original appeal, which "must be heard by the Commission on its merits under the terms of the 1975 Act."[8] We therefore do not

ther proceedings. This court has held that a party who prevailed in an agency proceeding has standing, when the losing party petitions for review, to seek appellate review of issues which the prevailing party lost before the agency. *Dankman v. District of Columbia Board of Elections and Ethics,* 443 A.2d 507, 518, 521–26 (D.C. 1981) (Ferren, J., concurring). We also have held, however, that "issues not raised by a tenant before the [Rental Accommodations] Commission may not be considered for the first time by this court." *DeLevay, supra,* 411 A.2d at 360. On the record before us, there is a question

read the court's passing references to 6.7% as judicial confirmation of the amount of the hardship increase. That figure was used for convenience because the Rental Administrator had approved that increase and it was not at issue on appeal.

The landlord argues, nonetheless, that the 6.7% increase is not subject to recomputation on remand because the issue was not raised in petitioners' original notice of appeal to the RAC. *See supra* note 8. More specifically, the Proctor notice of appeal to the RAC, on behalf of the Tenants Association, raised only the issue of the basic legality of the two increases. That, however, is not the entire story. The Tenants Association, through counsel, also alleged "plain error" in computation of the hardship increase as a "backup argument" at the RAC hearings on the original appeal, although the landlord claims that the tenants eventually withdrew that argument.

In any event, on remand of *Scholtz Partnership*, the RHC apparently considered only the issues raised by tenant McKinney because it erroneously believed this court had foreclosed consideration of any other issue.

▮▮▮▮▮▮ Absent a limiting mandate from this court, the RHC's authority over an appeal from the Rent Administrator's ruling (and therefore after remand by this court) is governed by 14 DCMR §§ 3330 *et seq.* Regulation 14 DCMR § 3303.3 provides:

> Review by the Commission shall be limited to the issues raised in the notice of appeal; Provided; that the Commission may correct plain error.

On the *Scholtz Partnership* remand, therefore, the RHC, by its own rules, was permitted, although not required, to consider issues not raised in the Proctor notice of appeal insofar as they revealed plain error—just as the RAC could have done at its original hearings. The RHC, however, did

whether this court in *Scholtz Partnership, supra,* could have reviewed the correctness of the 6.7% hardship increase, even if the tenant-intervenors had sought review of it, because there is a

not exercise its discretion, on remand, to consider whether the Rent Administrator committed plain error. Accordingly, on the second remand we order today, if the RHC decides not to adopt the compromise settlement proposed by the landlord and the Tenants Association, it may decide whether to notice plain errors alleged by petitioners.

### IV.

We reverse and remand to the Rental Housing Commission for consideration of the merits of the proposed order incorporating the parties' compromise settlement (*see supra* Part II.) and, if it rejects that proposal, for consideration of the original Proctor appeal (*see supra* Part III.).

*So ordered.*

question whether that group of tenants had properly challenged that calculation before the RAC. *DeLevay, supra.*