**LENKIN COMPANY MANAGEMENT, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

and

**Betty Arnold, Intervenor.**

**Nos. 93–AA–26, 93–AA–303.**

District of Columbia Court of Appeals.

Argued March 15, 1994.

Decided June 6, 1994.

Jack C. Sando, for petitioner.

David E. Alexander, for intervenor.

Before FERREN,* Acting Chief Judge, and STEADMAN and SULLIVAN, Associate Judges.

FERREN, Acting Chief Judge:

D.C.Code § 45–2520(e) (1990) provides that the Rent Administrator shall issue a decision on a capital improvement petition "within 60 days after receipt," and that the failure to do so "shall operate to allow the petitioner to proceed with a capital improvement." The principal question on appeal is whether a housing provider who begins to make a capital improvement within 60 days of filing the petition violates D.C.Code § 45–2520(e) and, as a consequence, loses the right to apply for a rent ceiling increase, even though the Rent Administrator fails to make a timely decision on the petition. The Rental Housing Commission (RHC) answered "Yes" and denied the requested rent ceiling increase for the improvements which the housing provider added during the 60 days after filing the petition. Deferring to the agency's reasonable interpretation of the statute it administers, and recognizing that petitioner did not question RHC's sanction in the event petitioner were held to have violated § 45–2520(e), we affirm.

I. Facts and Proceedings

On March 4, 1988, petitioner filed a capital improvements petition with the Rental Ac-

---

* *Judge* FERREN was an *Associate Judge* of this court at the time of argument. His status changed to *Acting Chief Judge* on March 18, 1994.

commodations and Conversion Division (RACD) of the Department of Consumer and Regulatory Affairs, seeking a rent ceiling increase based on several proposed capital improvements, including a new cooling tower and new lighting fixtures, for an apartment building located at 2424 Pennsylvania Avenue, N.W. (Pennsylvania House). Betty Arnold, a tenant in petitioner's building, intervened in opposition. RACD granted the petition with respect to the cooling tower and the lighting fixtures. Arnold appealed to RHC, contending that petitioner had violated D.C.Code § 45–2520(e) (1990)[1] by proceeding with the capital improvements, without approval, within 60 days of filing the petition for the rent ceiling adjustment, and that petitioner, as a result, was not entitled to the requested rent ceiling increase.

RHC agreed with Arnold that the evidence tended to show petitioner had violated the statute. RHC accordingly remanded the case to RACD for a hearing. On remand, RACD found that petitioner had begun to replace the cooling tower within 60 days of filing its capital improvements petition. For that reason, RACD concluded that petitioner had violated § 45–2520(e) and imposed a $500 fine against petitioner for willfully violating the statute.

RACD, however, ruled for petitioner on the lighting fixtures, allowing rent ceiling increases to account for all the fixtures. RACD found that petitioner had installed ten fixtures during the 60–day waiting period in good faith to respond to emergency needs,

and that petitioner had installed the other 102 fixtures after the 60–day period had expired. Both parties appealed to RHC.

On December 31, 1992, RHC issued a Decision and Order agreeing with the tenant that "the hearing examiner had no statutory authority to create a 'good faith' exception to the ... requirement that the housing provider wait 60 days before 'proceeding' with the installation of the ten (10) light fixtures." In addition, RHC "reverse[d] the hearing examiner on the finding that [replacement of the ten] broken light fixtures ... constituted, pursuant to D.C.Code § 45–2520(g),[2] an emergency capital improvement."[3] RHC ruled, accordingly, that petitioner was not entitled to a rent ceiling increase for the ten light fixtures replaced within 60 days of filing the capital improvements petition. RHC upheld the increase, however, for the 102 fixtures installed after the 60 days. RHC also agreed with the tenant that petitioner was not entitled to a rent ceiling increase for the cooling tower because the record supported RACD's finding that petitioner had "proceeded" with the cooling tower replacement too soon, in violation of § 45–2520(e). RHC also sustained the $500 fine RACD had imposed. Finally, RHC ordered a rent roll-back and refunds for excess rents already paid and remanded the case again to RACD for a determination of correctly adjusted rent ceilings attributable to installation of 102 light fixtures.

Both petitioner and the tenant filed motions for reconsideration. Petitioner argued

1. D.C.Code § 45–2520(e) (1990) provides:

    (e)(1) A decision by the Rent Administrator on a rent adjustment under this section shall be rendered within 60 days after receipt of a complete petition for capital improvement.

    (2) Failure of the Rent Administrator to render a decision pursuant to this section within the 60–day period shall operate to allow the petitioner to proceed with a capital improvement.

2. D.C.Code § 45–2520(g) provides:

    (g) The housing provider may make capital improvements to the property before the approval of the rent adjustment by the Rent Administrator for the capital improvements

where the capital improvements are immediately necessary to maintain the health or safety of the tenants.

3. For three reasons, RHC reversed the hearing examiner's ruling that petitioner had replaced the ten light fixtures because of an emergency: (1) RHC had held in its first remand order that the case did not involve an emergency capital improvement under § 45–2520(g), and that there was no evidence that any of the work had begun before the petition was filed; (2) the housing provider had not filed filed a petition for "emergency capital improvements;" and, in any event, (3) the testimony of the Pennsylvania House manager had not "put forth facts to justify an emergency for the installation of the ten light fixtures."

primarily that § 45–2520(e) does not "authorize the rent administrator to reject the capital improvement petition of a housing provider who *prepares to implement* a capital improvement before the end of the 60–day time period." (Emphasis added.) Tenant Arnold, in her motion, argued that (1) RHC "should document that all of the tenants [in Pennsylvania House] are proper parties"[4] and that (2) RHC should include the rent ceiling rollback for the entire lighting system, rather than for a fraction thereof, because the 112 light fixtures are indivisible, comprising a lighting "system" for which installation had begun prematurely during the 60–day waiting period.

RHC denied both motions in a February 10, 1993 Order on Reconsideration and Other Relief. As to petitioner's motion, RHC reaffirmed its ruling that § 45–2520(e) requires a housing provider to wait the entire 60–day period before proceeding in any way with a capital improvement. RHC concluded that there was sufficient evidence to support the hearing examiner's findings that petitioner had "completely installed ten lights" within the 60–day period, and that although "the cooling tower was not completely installed before the 60–day deadline expired ... the housing provider had sufficiently 'proceeded' with the capital improvement prior to the expiration of the 60–day deadline" to violate § 45–2520(e).

As to the tenant's contentions on reconsideration, RHC—changing its earlier ruling, see *supra* note 4—ruled that Betty Arnold was "the only proper tenant party in this case." RHC also disagreed with Arnold's second contention that the rent ceiling rollback should incorporate an adjustment for all 112 light fixtures, not merely for the ten fixtures installed prematurely during the 60–day waiting period. RHC ruled that substantial evidence supported RACD's findings

that distinguished between lighting fixtures installed, respectively, during and after the 60–day period.[5] Implicitly, therefore, RHC rejected Arnold's legal contention that the light fixtures comprised an undifferentiated "system." Both parties noted an appeal to this court.

## II. Petitioner's (Housing Provider's) Appeal

### A.

■ Petitioner contends that it did not violate D.C.Code § 45–2520(e) because that provision was not intended to limit a housing provider's right to a rent adjustment; it was intended merely to limit the time within which RACD may act on a capital improvement petition. We must "defer to an agency's interpretation of the statute which it administers ... so long as that interpretation is reasonable and consistent with the statutory language." *Boer v. Rental Hous. Comm'n,* 564 A.2d 54, 57 (D.C.1989). The agency's interpretation, therefore, is "controlling unless it is plainly erroneous or inconsistent with the statute." *Weaver Bros. v. District of Columbia Rental Hous. Comm'n,* 473 A.2d 384, 388 (D.C.1984).

■ We conclude that RHC's interpretation of D.C.Code § 45–2520(e) is not unreasonable; it is consistent with the plain language and legislative history of the statute. Subsection (e)(2), *supra* note 1, clearly states that if the Rent Administrator fails to issue a decision within 60 days after receipt of a complete capital improvements petition, that failure "shall operate to *allow* the petitioner *to proceed* with a capital improvement." D.C.Code § 45–2520(e)(2) (emphasis added). This language, therefore, can reasonably be interpreted to mean that, absent permission from the Rent Administrator, a capital improvements petitioner is not "allow[ed]" to

---

4. Although RHC, in its Decision and Order of December 31, 1992, ordered rent roll-backs and refunds for all the tenants in Pennsylvania House, counsel for Betty Arnold moved RHC "to determine the proper parties, and petitioner did not oppose."

5. RHC noted as support for its conclusion petitioner's exhibit # 1, "which documented the purchase and delivery of only 10 light fixtures, which the manager of the housing accommodation testified on remand were completely installed before the expiration of the 60 day period."

"proceed" before expiration of the 60–day period.

Moreover, as discussed in RHC's February 10, 1993 order, the legislative history of subsection (e) supports RHC's interpretation:

> Subsection (e) requires the rent administrator to issue a decision on a capital improvement petition within 60 days after receiving the completed petition. *If the administrator fails to meet this deadline, then the petitioner may proceed with the capital improvement.*

COUNCIL OF THE DISTRICT OF COLUMBIA, SECTION-BY-SECTION ANALYSIS FOR THE AMENDMENT IN THE NATURE OF A SUBSTITUTE FOR BILL 6–33, Section 210(e) (April 30, 1985) (emphasis added). This legislative history is consistent with RHC's interpretation that, unless the Rent Administrator issues an affirmative decision within the required 60 days, a housing provider may "proceed" with the capital improvement only "[i]f"—and thus only after—"the administrator fails to meet this [60–day] deadline." *Id.*

Finally, this interpretation of subsection (e) is reinforced by the inclusion of subsection (g), which authorizes a housing provider to make capital improvements before approval by the Rent Administrator when there is in an emergency, *i.e.,* when "the capital improvements are immediately necessary to maintain the health or safety of the tenants." See *supra* note 2. This provision, therefore, implies—consistent with RHC's interpretation of subsection (e)—that absent an emergency, capital improvements are not permitted without prior approval of the Rent Administrator.

### B.

We turn, therefore, to the question of the sanction to be imposed for § 45–2520(e) violation. In the RHC proceeding, both initially and on reconsideration, petitioner rested its case on two claims: (1) the statute was not intended to limit a housing provider's right to "proceed" with a capital improvement during the 60–day waiting, and in any event, (2) as a matter of fact and of law, petitioner had not "proceeded" with any of the capital improvements during the statutory 60–day waiting period. Implicitly, therefore, petitioner conceded that if it lost these arguments (which it did), RHC's sanction—no rent ceiling increase for the capital improvements—was not inappropriate.

██ Petitioner now argues, for the first time in this litigation, that even if a housing provider violates § 45–2520(e), such a violation does not preclude a rent ceiling increase for capital improvements. Aside, however, from suggesting that the Rent Administrator has authority to impose a fine for a violation of the Rental Housing Act, petitioner offers no reason why a fine—and not denial of the capital improvements petition—would be the only appropriate remedy. In any event, "[i]n the absence of exceptional circumstances, this court will not entertain contentions not raised before the agency." *Glenbrook Rd. v. Board of Zoning Adjustment,* 605 A.2d 22, 33 (D.C.1992); see *Lundahl v. Department of Employment Servs.,* 596 A.2d 1001, 1003 (D.C.1991) ("Ordinarily, failure to raise a claim at the agency level precludes its consideration on appeal."). We perceive no exceptional circumstances presented by the particular facts of this appeal that would warrant our consideration of petitioner's contention despite the failure to present it to RHC. We therefore do not disturb RHC's sanctions here.[6]

### III. Intervenor's (Tenant's) Appeal
### A.

Tenant-intervenor, Betty Arnold, contends that RHC should have granted the rent ceil-

6. We well recognize the potential impact of RHC's interpretation that the statute forbids *any* recoupment of capital improvement costs when a landlord has "proceed[ed]" in some small way with a project even on the last day of the 60–day waiting period. Such a conclusion, which in certain circumstances could amount to a sanction akin to a forfeiture, is by no means clear from the statute. RHC does not explain why such a result is necessary to effectuate the purpose of a statute aimed at controlling rent levels, not at prohibiting landlords from improving their property as they wish. It could well be, for example, that RHC might conclude in another case that premature commencement of a project only precludes the landlord from recouping the costs incurred before the 60–day period had expired, or that some other, less harsh consequence

ing reduction and corresponding rent refund not only for the cooling tower and for the ten lighting fixtures installed before expiration of the 60–day period specified in D.C.Code § 45–2520(e), but also for the other 102 lighting fixtures petitioner installed after the 60–day period had expired. Arnold argues that petitioner sought capital improvements of the lighting "system," which included all 112 lighting fixtures together, rather than two separate sets of ten fixtures and 102 fixtures, respectively. Arnold accordingly maintains that when petitioner "proceeded" with the installation of the first ten lighting fixtures, petitioner "proceeded" to install the entire lighting system within the 60 days.

■ RHC implicitly concluded in its February 10, 1993 Order on Reconsideration and Other Relief, as a matter of law, that 112 lighting fixtures do not necessarily comprise a unitary lighting system; installation of ten fixtures does not legally imply the installation of an entire 112–fixture system. That is not an unreasonable application of § 45–2520(e).

RHC further concluded that the record contained substantial evidence that the ten light fixtures installed before expiration of the 60–day period were factually, as well as legally, distinguishable from the 102 fixtures installed after that period. We agree there is substantial record evidence—and intervenor does not contest—that only 10 fixtures were installed within 60 days after the petition was filed. The record contains a petitioner's exhibit documenting the purchase and delivery of ten lighting fixtures on April 29, 1988, within the 60–day period after petitioner filed its capital improvements petition.

In addition, the building manager testified at the remand hearing that these ten light fixtures had been completely installed before expiration of the 60–day period. See *supra* note 5. On the other hand, the record contains a notation on a proposal for electrical work documenting that fifty percent of the purchase price of the other 102 light fixtures was paid on August 24, 1988 for the delivery of those fixtures on August 24, more than 60 days after the capital improvements petition had been filed. Accordingly, the record supports RHC'S conclusion that only ten of petitioner's 112 lighting fixtures had been installed within the 60–day period. *See Cohen v. Rental Hous. Comm'n*, 496 A.2d 603, 605 (D.C.1985) (reviewing court "must determine whether there is substantial evidence in the record to support the decision" of an administrative agency).

### B.

■ Finally, the tenant contends that all the tenants in Pennsylvania House should benefit from the RHC-ordered rent ceiling roll-back and rent refund. She argues that, because all the tenants were named in petitioner's original capital improvements petition and were listed as parties in the hearing examiner's original decision granting that petition, RHC's final ruling should apply to them all. We cannot agree.

Although both the capital improvements petition and the hearing examiner's August 10, 1988 order named all the tenants, Betty Arnold, the intervenor, was the only tenant who appealed the hearing examiner's decision to RHC.[7] The notices of appeal from the hearing examiner's orders of August 10,

should result from a violation in a particular case. In any event, we expressly leave open the issue of sanction for another day, when properly raised before, and addressed by, RHC.

7. Although we disagree with intervenor Arnold that all the tenants should benefit from these proceedings, we note that RHC, in its February 10, 1993 order, understated the extent to which the other tenants had participated in the proceedings. RHC stated:

Since Betty Arnold, the tenant and client of Attorney David Alexander, was the only tenant

out of the 142 tenants who received notices of the hearing, who appeared as a party at the hearing and who appealed the decision of the hearing examiner, the Commission holds Betty Arnold is the only proper tenant party in this case. The other tenants affected by the capital improvement petition did not both contest it and appeal it. Therefore, the other tenants in the housing accommodation are not proper parties to this appeal.

In fact, the record indicates that, in addition to Arnold, two other tenants attended the first RACD hearing on the capital improvements peti-

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

1988 and of February 21, 1992 both state: "Betty Arnold, tenant, 2424 Pennsylvania Ave. N.W. #508, hereby gives Notice of Appeal of the Decision and Order." Betty Arnold's appeal of the order affecting her rent ceiling did not necessarily affect other tenants because, theoretically, each unit has its own rent ceiling; rent ceilings are not necessarily the same throughout a building. *See, e.g.,* D.C.Code § 45–2519(a) (1990) (referring to "the rent ceiling for any rental unit").

Furthermore, Arnold is also the only tenant who brought an appeal from RHC to this court. Finally, the record reflects—and counsel for intervenor conceded at oral argument—that the tenants had not established a tenants' organization or otherwise joined together for purposes of contesting the rent ceiling adjustment or appealing RACD's or RHC's orders on behalf of all tenants. *See DeLevay v. District of Columbia Rental Accommodations Comm'n,* 411 A.2d 354 (D.C. 1980) (tenant who failed to join tenant association in initial challenge to rent increase before rental accommodations office was not entitled to obtain review of decision). We therefore agree with RHC that Arnold is the only tenant party in this case who has preserved the right to relief from RHC and from this court.[8] *See Proctor v. District of Columbia Rental Hous. Comm'n,* 484 A.2d 542, 548 n. 6 (D.C.1984) ("Tenants who have had notice of, but not participated in, the agency proceedings would not have standing to challenge the result on appeal to this court.").

*Affirmed.*

---

tion and that attorney David Alexander, who was also a tenant of Pennsylvania House, signed the attendance sheet for the remand hearing as "attorney for tenants, Betty Arnold, David Alexander, et al." No tenant other than Arnold, however, appealed to RHC or to this court.

8. This decision is not intended to preclude other tenants from pursuing remedies similar to Arnold's if there is no other bar—an issue we do not address.